729 P.2d 898

**ARIZONA DEPARTMENT OF REVE-
NUE and J. Elliott Hibbs, Director,
Plaintiffs-Appellees,**

v.

**TRICO ELECTRIC COOPERATIVE,
INC., an Arizona Corporation,
Defendant-Appellant.**

**No. CV–86–0080–T.**

Supreme Court of Arizona,
En Banc.

Nov. 19, 1986.

Reconsideration Denied Jan. 13, 1987.

Robert K. Corbin, Atty. Gen., James D. Winter, Asst. Atty. Gen., Phoenix, for plaintiffs-appellees.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo by John F. Molloy, Tucson, for defendant-appellant.

GORDON, Vice Chief Justice.

## I.

Appellant Trico Electric Cooperative, Inc. ("Trico") owned property in Arizona subject to property tax assessment in 1982 and 1983 under A.R.S. § 42–124.01 [1] (now § 42–144). Based on information contained in Trico's annual reports filed with the Arizona Department of Revenue (the "DOR") for years ending December 31, 1982, and December 31, 1983, the DOR calculated the taxable value of Trico's property under § 42–124.01 to be $16,865,000 for 1983 and $18,147,000 for 1984.

Trico appealed the DOR's valuations to the State Board of Tax Appeals (the "Board"). The Board concluded that the DOR had not used standard appraisal methods and techniques to calculate Trico's taxable values and that the DOR's taxable values were excessive based upon economic and functional obsolescence and equity considerations. The Board then determined that the taxable value of Trico's property for 1983 and 1984 was $8,820,000 and $9,000,000, respectively.

The DOR appealed the Board's decision to superior court as permitted by A.R.S. §§ 42–146 and 42–151 (now §§ 42–176 and 42–177, respectively). The superior court reversed the Board's decision, calculated 1983 and 1984 taxable values of $16,865,000 and $17,438,638, respectively,[2] and ordered Trico to pay 16% interest under delinquency provisions of A.R.S. § 42–342 on additional tax assessments resulting from reinstatement of higher valuations. Trico appealed the superior court's judgment to the state court of appeals. However, both parties subsequently filed petitions for transfer with this court which were granted under Ariz. Const. art. 6, § 5(3) and Rule 19(a), Ariz.R.Civ.App.P.

For reasons below, we affirm the superior court's reinstatement of the DOR's valu-

ations and reverse its decision to assess interest at 16% on the additional tax assessments.

## II.

Article 9, § 11 of the Arizona Constitution vests the legislature with "the manner, method and mode of assessing, equalizing and levying taxes in the State of Arizona...." Prior to 1980, the legislature required the DOR to assess property taxes on the "full cash value" of all gas, water, and electric utilities and pipelines. A.R.S. § 42–124.01(A). "Full cash value" was defined in A.R.S. § 42–201(4) as "synonymous with market value which means that estimate of value that is derived annually by the use of standard appraisal methods and techniques."

The legislature amended both statutes in 1980. Paragraphs (B) through (I) were added to § 42–124.01 and provided in relevant part:

B. All electric, gas distribution and combination gas distribution and electric utility property subject to valuation for property taxation purposes shall be valued as provided in this section.

    \*    \*    \*    \*    \*    \*

D. An electric, gas distribution or combination electric and gas distribution plant shall be valued as follows:

1. The department shall determine the original plant in service cost.

2. The original plant in service cost shall then be reduced by the related accumulated provision for depreciation. \* \* \*

A.R.S. § 42–201(4) was amended to allow calculation of full cash value by standard appraisal methods and techniques "or as provided by law."

---

1. Since judgment below, most statutes with which we are concerned have been renumbered. Numbers prevailing at the time of judgment will be used throughout this opinion with parenthetical insertion of current numbers made where applicable.

2. The DOR does not disagree that the 1984 taxable value should be $17,438,638 rather than $18,147,000. See Appellees' Answering Brief at 3.

The amendments effectively eliminated the automatic use of standard appraisal methods and techniques to calculate full cash value. Statutory formulae, such as § 42–124.01(D), now provide an additional method for calculating full cash value.

■ When amended § 42–201(4) is read with amended § 42–124.01, we conclude that the legislature intended the statutory formula in § 42–124.01 to be the exclusive method used to calculate full cash value of electric and gas utilities. Legislative intent is "determined primarily from the language of the statute itself, and, when that is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to the rules of statutory construction. The statute must be given its plain and obvious meaning." *DeWitt v. Magma Copper Company*, 16 Ariz.App. 305, 308, 492 P.2d 1243, 1246 (1972) (quoting *Automatic Registering Machine Co. v. Pima County*, 36 Ariz. 367, 370–71, 285 P. 1034, 1035 (1930)). A.R.S. § 42–124.01(B) and (D) state that utility property "shall be valued" as provided therein. Unambiguous use of the word "shall" indicates that the legislature intended the statutory method of calculating full cash value prescribed therein to be mandatory and that the historical practice of using standard appraisal methods to calculate full cash value was not to be followed.[3] We therefore hold that the DOR's valuations as calculated under A.R.S. § 42–124.01(D), rather than the Board's valuations as calculated under standard appraisal methods, reflect the proper full cash value of Trico's property.

### III.

■ Trico argues that § 42–124.01 violates Ariz. Const. art. 9, § 1, which provides in relevant part: "All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax...." Trico first contends that § 42–124.01 imposes higher taxes on cooperative electric utilities, such as itself, than on investor-owned electric utilities, with which cooperative electric utilities are statutorily classified.

Investor-owned electric utilities, unlike cooperatives, are profit-motivated. To reduce their tax liability on income earned, investor-owned electric utilities depreciate their property much more rapidly than do cooperatives. Both types of utilities can have the same initial cash outlay for utility property. However, full cash value of investor-owned property will be less than full cash value of cooperative-owned property at any given point in time because the investor-owned electric utility will depreciate the property over a shorter life, resulting in larger depreciation deductions in early years.[4] For example, if property purchased for $1,000,000 is depreciated over a 10–year life by an investor-owned utility and over a 33⅓–year life by a cooperative utility, the full cash value after five years will be $500,000 on investor-owned property and $850,000 on cooperative-owned property. If the applicable property tax rate is 30% of full cash value, property taxes for the investor-owned utility and cooperative utility will be $150,000 and $255,000, respectively. Trico argues that this discrepancy between property tax assessments on identical property violates uniformity requirements of Ariz. Const. art. 9, § 1.

We acknowledge that discrepancies between property tax assessments on identical property may result under § 42–124.01. However, the above discrepancy directly results from discretion given the utility in selecting the useful life of its property over

---

**3.** This conclusion is buttressed by the fact that A.R.S. § 42–124.01(D)(3) permitted a three-year phase-in of the statutory formula from 1980 to 1982 to allow utilities to adjust to the new valuation system on an orderly basis. If the new statutory formula prescribed in A.R.S. § 42–124.01 was permissive after 1982, rather than mandatory, then the three-year phase-in provision would have been meaningless. (A.R.S.

§ 42–124.01(D)(3) was deleted after 1982 because it was no longer applicable.)

**4.** However, both utilities will deduct the same total amount of depreciation over the life of the property, assuming salvage value concerns are ignored.

which depreciation is deducted. The discrepancy could be eliminated if all utilities adopted identical useful lives over which to depreciate their property. However, we have not been made aware of, nor can we find, any legislative or regulatory provision requiring the legislature or the DOR to implement such a procedure. Furthermore, Ariz. Const. art. 9, § 1 does not require uniformity in depreciation practices. "The only restraint placed upon the legislature by this provision is that when property has once been classified *the rate must be uniform* upon all property of the same class." *Apache County v. Atchison, Topeka and Santa Fe Railway Co.*, 106 Ariz. 356, 359, 476 P.2d 657, 660 (1970) (emphasis added), *appeal dismissed*, 401 U.S. 1005, 91 S.Ct. 1257, 28 L.Ed.2d 542 (1971). Because identical tax rates have been applied uniformly to both investor-owned and cooperative utility property, tax assessment discrepancies among utilities resulting from discretionary depreciation practices permitted by law do not violate constitutional uniformity requirements.

■ Trico also contends that the property classification statute, A.R.S. § 42–136, violates the uniformity clause. The relevant portion of § 42–136 (now § 42–162) provides:

A. There are established the following classes of property for taxation:

\* \* \* \* \* \*

2. Class two:

\* \* \* \* \* \*

(b) All property, both real and personal, of gas, water and electric utility companies and pipeline companies valued under the provisions of § 42–124.-01 or 42–201, whichever is applicable.

Under § 42–136(A)(2)(b), property of gas and electric utilities is valued under § 42–124.01, which uses a statutory formula to calculate full cash value; property of water and gas pipeline utilities is valued under § 42–201, which uses standard appraisal methods to calculate full cash value. Trico argues that because gas, electric, water, and pipeline utility property have been classified together, full cash values of such property must be calculated using identical formulae rather than using both statutory formulae and standard appraisal methods.

Despite express statutory language suggesting otherwise, we believe that § 42–136(A)(2)(b) creates not one but two property classes. The legislature amended § 42–124.01 to value electric and gas distribution utilities differently from water and gas pipeline utilities. The simultaneous amendment of § 42–136(A)(2)(b) indicates legislative intent to harmonize the classification statute with the valuation statute and create two separate classes of utility property. Any other interpretation would render the amendment to § 42–136(A)(2)(b) meaningless.

We confronted a similar dilemma in *Apache County, supra,* where the relevant portion of § 42–136 provided:

1. Class one:

(a) Flight property valued under the provisions of §§ 42–701 through 42–705.

(b) All real and personal property used in the operation of private car companies valued under the provisions of §§ 42–741 through 42–748.

(c) All real and personal property of railroad companies used in the continuous operation of a railroad valued under the provisions of §§ 42–761 through 42–766.

(d) Producing mines and mining claims, the personal property used thereon, the improvements thereto and the mills and smelters operated in conjunction therewith valued under the provisions of § 42–124.

(e) Standing timber.

Despite express statutory language suggesting that all property listed as "Class one" comprised one property class, we held that each subparagraph constituted a separate class for purposes of the uniformity clause. 106 Ariz. at 359, 476 P.2d at 660.

Extending our holding in *Apache County* to permit finding two property classes *within* a subparagraph is logical for at least three reasons. First, such an interpretation permits harmonization between

the valuation and classification statutes as discussed *supra*. Second, to hold otherwise would elevate statutory "form" over statutory "substance." Under *Apache County* the legislature could have created two utility classes by amending § 42–136(A)(2) in the following manner:

> (b) All property, both real and personal, of electric and gas distribution utilities, valued under provisions of § 42–124.01(B).
>
> (c) All property, both real and personal, of water and gas pipeline utilities, valued under provisions of § 42–201.

Substantively, the legislature's actual amendments are no different than those just proffered. We decline to require the legislature to substantively articulate in separate subparagraphs what it could permissibly articulate in one. Third, in interpreting a statute we should, if possible, avoid making the statute unconstitutional. *Mardian Construction Company v. Superior Court*, 113 Ariz. 489, 493, 557 P.2d 526, 530 (1976). Interpreting § 42–136(A)(2)(b) to create two utility property classes renders the statute constitutional because tax rates and formulae used to calculate tax bases are uniform within each of the two classes.

### IV.

■ Trico also contends that the legislature's decision to use the cost-less-depreciation formula in § 42–124.01 for calculating full cash value of property of certain utilities violates constitutional requirements of due process and equal protection. To withstand constitutional scrutiny, the statute must rest on a rational basis rather than result from an arbitrary or capricious legislative decision. *See Apache County*, 106 Ariz. at 362–63, 476 P.2d at 663–64.

■ Value, like beauty, is often defined by the eye of the beholder. It is incapable of being calculated with mathematical precision and therefore necessarily must be estimated.[5] Arizona has recognized three generally-accepted approaches to estimating real property valuations: the income approach, the market data approach, and

the cost-less-depreciation approach. *Department of Revenue v. Transamerica Title Insurance Co.*, 117 Ariz. 26, 570 P.2d 797 (App.1977).

We have held that using the income approach to calculate full cash value of property owned by a cooperative utility is "fundamentally wrong" because such an entity "is a non-profit corporation, and it sets its rates with the deliberate intention of not making a profit." *Graham County v. Graham County Electric Cooperative, Inc.*, 109 Ariz. 468, 471, 512 P.2d 11, 14 (1973). Left with selecting either the market data approach or the cost-less-depreciation approach, we decline to find the legislature's selection of the latter approach arbitrary or capricious. Market data is not always available. Even when it exists, market data is not immune from being attacked as over- or understated. In addition, both parties acknowledge that at least some sales of utility property are made at cost less depreciation. We conclude that the legislature's 1980 decision to require full cash value of certain utility property to be calculated by the generally-recognized cost-less-depreciation method was rational.

### V.

We have held that a taxpayer has a constitutional right to have its tax valuations equalized. *See, e.g., Southern Pacific Co. v. Cochise County*, 92 Ariz. 395, 377 P.2d 770 (1963). Trico argues that A.R.S. § 42–124.01 violates its constitutional right to have the Board adjust its tax assessment. We disagree.

■ The Board has statutory authority to equalize property valuations within a property class "so that all property subject to property taxation is listed on the rolls at its full cash value." A.R.S. § 42–143(A) (now § 42–173(A)). If a valuation formula is being applied inconsistently or erroneously, the Board has the power to correct the valuation. However, the Board does not have unbridled power. Its equalization power is limited to changing valuations to reflect full cash value. As discussed *supra*, the definition of "full cash value" now

---

5. A.R.S. § 42–201(4) itself defines "full cash value" as an "estimate of value".

includes valuations as provided by law, and such laws include § 42–124.01. If the DOR assesses property tax on the full cash value of utility property as prescribed by § 42–124.01, as in this case, the Board cannot alter the DOR's valuation, ignore state law, and create its own valuation standards contrary to clearly articulated and unambiguous legislative mandates.

## VI.

■ In addition to reinstating the DOR's full cash value amounts, the superior court ordered Trico to pay interest at 16% on the additional tax assessments resulting from reinstatement of higher valuations. The superior court invoked A.R.S. § 42–342 to charge 16% interest. That statute provides in relevant part:

A. *The roll* with the warrant affixed shall be the authority of the treasurer to collect the *taxes therein levied.*

B. Immediately upon receipt of the *tax roll* from the board of supervisors, the county treasurer shall publish an official notice specifying:

1. That the assessment and *tax roll* of the county for the year is now in his possession for collection of the taxes levied.

2. That one-half of the taxes on all personal property secured by real property and one-half of the taxes on all real property will be due and payable October 1, unless the total amount of taxes is ten dollars or less in which case the full amount of the taxes will be due and payable on October 1. *Such taxes* will be delinquent pursuant to § 42–381, subsection A and unless paid interest will be added to the tax from the time of the delinquency at the rate of sixteen per cent per year simple, prorated monthly as of the first day of the month until paid.

    \*    \*    \*    \*    \*    \*

(Emphasis added.) The emphasized language indicates that only after taxes listed on the tax rolls have become delinquent can the taxpayer be charged 16% interest on delinquent amounts. Before the statute applies, however, taxes first must be recorded on the tax rolls.

■ Trico has paid all taxes recorded on the tax rolls. Taxes paid were based on the Board's, rather than the DOR's, calculation of full cash value. Despite the superior court's reinstatement of the DOR's full cash values, the resulting higher taxes have yet to be recorded on the tax rolls because Trico's timely appeal of the superior court's judgment precluded correction of the tax rolls. *See* A.R.S. § 42–152(G) (now § 42–178(G)). Because Trico has paid all taxes recorded on the tax rolls, its tax assessments are not delinquent and thus it cannot be charged 16% on additional tax assessments resulting from the superior court's reinstatement of the DOR's higher full cash values.

■ Nevertheless, interest is due on the superior court's judgment. A.R.S. § 42–152(E) (now § 42–178(E)) provides in relevant part: "Interest at the legal rate on the overpayment or underpayment [of taxes] shall be payable from the date of overpayment or underpayment." The "legal rate" is defined in A.R.S. § 44–1201(A), which provides: "Interest on any ... judgment ... shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to." We hold that the appropriate interest rate to be charged on additional tax assessments resulting from reinstatement of the DOR's full cash values is the "legal rate" of 10%.

## VII.

Judgment of the superior court is affirmed in part and reversed in part and remanded for proceedings consistent with this opinion.

HOLOHAN, C.J., and HAYS and CAMERON, JJ., concur.

FELDMAN, Justice, concurring.

I concur in the result reached, but only because that result is mandated by our decision in *Apache County v. Atchison, Topeka & Santa Fe Railway Co.*, 106 Ariz. 356, 476 P.2d 657 (1970). I believe the principles announced in *Apache County*

are incorrect. If we were writing on a clean slate, I would hold the statutes presently before us unconstitutional.

The legislature has classified investor-owned urban utilities and cooperative rural utilities, together with telephone and telegraph companies, water utilities, and pipeline companies, as "Class two" properties for "taxation." A.R.S. § 42–136(A)(2)(b) (now § 42–162). The same statute (A.R.S. § 42–136(A)(2)(b)) then provides that property of gas, water, electric, and pipeline companies shall be valued either under A.R.S. § 42–124.01 or § 42–201. The result is that all these utilities are to be assessed at "full cash value." A.R.S. § 42–124.01. In the case of water utilities and pipeline companies, full cash value means "that estimate of value that is derived annually by the use of standard appraisal methods and techniques or as provided by law." A.R.S. § 42–201(4). In contrast, A.R.S. § 42–124.01(D) provides that electric and gas companies shall be valued by a process that is, in essence, a determination of book value. (Original plant in service cost, less depreciation.) Consequently, in valuing one type of utility property, the Department of Revenue applies whatever standard appraisal technique will be most likely to establish market value, while gas and electric utility companies are valued under a book value formula. The summary judgment record establishes that in the case of urban utilities this produces an assessed value much less than market value, and in the case of cooperatives may produce an assessed value much higher than market value.

The principle of uniformity required by art. 9, § 1 of our Constitution requires that the legislature determine the value of all properties of the same class—those with similar attributes—by a consistent, uniform method. In my view, the use of what is essentially a book value formula for valuation of electric utilities, when all other utilities must be valued under A.R.S. §§ 42–124.01(A) and 42–201(4) by applying whatever standard appraisal technique will be most likely to establish market value, violates the uniformity requirement of Ariz. Const. art. 9, § 1.

*Apache County, supra,* holds, however, that the constitutional requirement of uniformity only prevents the legislature from establishing a different tax rate for identical types of property, but does not prevent the legislature from establishing different valuations by placing property with similar attributes in different classes. 106 Ariz. at 359, 476 P.2d at 660. This, the majority holds, is all that has been done here. 151 Ariz. at 548–549, 729 P.2d at 902–903. Thus, under *Apache County,* the legislature can fulfill the constitutional requirement of uniformity not only by taxing horses at one rate and camels at another, but by enacting a statute providing that some horses shall be called camels and taxed as such. We give too much deference to legislative prerogative when we allow the legislature to destroy constitutional protection.

It is, however, late in the game to overrule the precedents on which our tax schemes have been based for the last twenty years. I therefore concur in the result.