870 P.2d 1125

**BUSINESS REALTY OF ARIZONA, INC., a corporation, Plaintiff–Appellee,**

v.

**MARICOPA COUNTY, a political subdivision of the State of Arizona, Defendant–Appellant.**

No. 1 CA–TX 92–0005.

Court of Appeals of Arizona, Division 1, Department T.

Aug. 5, 1993.

Review Granted as to One Issue and Denied as to One Issue April 20, 1994.

---

**30**

Fennemore Craig, P.C. by Paul J. Mooney and Donald P. Roelke, Phoenix, for plaintiff-appellee.

Helm & Kyle, Ltd. by John D. Helm, Roberta S. Livesay and Ileen K. Keenan, Tempe, for defendant-appellant.

## OPINION

TOCI, Judge.

Maricopa County ("the county") appeals from the tax court's judgment in favor of Business Realty of Arizona, Inc. ("the taxpayer") setting the full cash value of the Camelview Plaza shopping center at $12,896,-672. The taxpayer elected to value the shopping center by the straight line building residual income method ("SLBR") prescribed in Ariz.Rev.Stat.Ann. ("A.R.S.") section 42-147(B). That section states: "Upon a review or appeal, at the election of the taxpayer, the income method commonly known as the [SLBR] method shall be used in the valuation of a shopping center ... if the taxpayer submits all reasonably necessary income and expense information."

Section 42-147(B) also provides, however, that the shopping center value reached through the SLBR method is "subject to the provisions of [section 42-147(D)]." The latter section states "if ... the reviewing body finds that other valuation factors must be applied to determine the value of the property it may utilize such other factors as it finds necessary."

The county argues that the value determined by the SLBR method seriously understates the true value of the shopping center, and therefore, under section 42-147(D), the tax court must apply "other valuation factors." It contends that other valuation factors includes market adjustments to the statutory capitalization rate prescribed by section 42-147(B) and fair market value appraisal techniques. Thus, the issue is whether these two items are "other valuation factors" that the tax court must consider and apply under section 42-147(D) in determining the full cash value of a shopping center.

We conclude that when a taxpayer elects to value a shopping center pursuant to section 42-147(B), the value derived by the SLBR method is the prima facie full cash value of that property. We also conclude that although section 42-147(D) gives the county the opportunity to present other evidence to overcome the prima facie value, it may not do so with fair market value appraisal techniques or market adjustments to the SLBR method's fixed capitalization rate prescribed in section 42-147(B).

The tax court misinterpreted the statute to mean that once the value of the shopping

center had been computed by the SLBR method, it could not consider "other valuation factors." Nevertheless, the error is not reversible because the county's evidence does not fall within the definition of "other valuation factors." Based on our reading of the statute, the tax court could not properly consider the county's fair market value appraisals and market adjustments to the SLBR method's capitalization rate to overcome the prima facie value established by the SLBR method. Consequently, we affirm the tax court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The taxpayer owns Camelview Plaza at 6900 East Camelback Road in Scottsdale. This property consists of a two-story shopping center [1] and an eleven-story office building. The six tax parcels that comprise the shopping center and associated movie theater and parking structures have an aggregate area of 22.07 acres.

In 1990, the Maricopa County Assessor's Office valued the shopping center at $26,301,-328. The taxpayer protested this assessment and elected to have the shopping center valued pursuant to A.R.S. section 42–147(B). The Maricopa County Board of Equalization then reduced the full cash value of the shopping center to $18,475,184.

Desiring a further reduction, the taxpayer appealed to the tax court pursuant to A.R.S. section 42–245(A)(1).[2] In that appeal, the issue was whether the shopping center's 1990 full cash value should be determined exclusively by the SLBR method prescribed in A.R.S. section 42–147(B). The county argued that the tax court should consider "other valuation factors" pursuant to section 42–147(D) because the SLBR method by itself would produce a value well below the market.

At the hearing before the tax court, both the taxpayer and the county presented real estate appraisers who testified as expert witnesses to values derived from the use of the SLBR method.[3] In calculating the value of the shopping center with the SLBR method, the appraisers first determined the annual net income of the center. Then, they determined the value of the land, exclusive of improvements. Next, the appraisers allocated a portion of the net income to the value of the land by multiplying the land value by a capitalization rate.[4] The product of this calculation, which is the amount of net income generated by the land, was then subtracted by the appraisers from the total annual net income. According to the appraisers, the remainder is the amount of net income generated by the improvements. Finally, the appraisers divided the amount of net income attributable to the improvements by the statutory capitalization rate provided in section 42–147(B) to arrive at the value of the im-

1. A.R.S. § 42–147(F)(2) provides: "Shopping center" means an area comprised of three or more commercial establishments, the purpose of which is primarily retail sales, which has a combined gross leasable area of at least twenty-seven thousand square feet, owned or managed as a unit and one or more of the establishments having a gross leasable area of at least ten thousand square feet which is either owner-occupied or subject to a lease which was entered into with a minimum term of fifteen years.

2. The statutory scheme in effect for the tax year 1990 permitted taxpayers to proceed directly to the tax court at any point in the administrative appeal process by filing a notice of appeal on or before November 1.

3. The SLBR method, like other building residual techniques, assumes that the value of the land and of the improvements can be estimated independently. *See The Appraisal of Real Estate*, Ch.

20 at 473 (10th ed. 1992) (explaining the building residual technique).

4. Section 42–147(B)(2) requires a capitalization rate partially comprised of "a recapture rate based on a thirty-five year economic life." Land, however, does not have an economic life. *See Appraisal of Real Estate*, Ch. 16 at 344 ("economic life is the period of time over which improvements to real estate contribute to property value"). Thus, the statute does not make clear whether a market-based or statutory capitalization rate applies to the land value. Nevertheless, each expert in this case who testified to the SLBR value used a capitalization rate for the land value comprised of a 10% discount rate and the property's most recent effective tax rate pursuant to A.R.S. section 42–147(B)(1). Because it is not necessary for us to reach the issue in order to resolve this case, we express no opinion about the propriety of capitalizing the land value with the statutory capitalization rate.

provements. The appraisers then added the value of the improvements to the land value to reach the SLBR value of the shopping center.

Although each expert used the SLBR method, each derived a different SLBR value for the shopping center. The taxpayer's expert, Carroll Belt, testified that the SLBR value for the shopping center was $11,641,000. One of the county's expert witnesses, Robert Francy, computed the SLBR value at $12,200,000. The county's other expert witness, an employee of the county assessor's office, Sarah Esser, calculated a SLBR value of $15,950,838.

Both Francy and Esser, however, also offered opinions that the fair market value of the property was much higher than the values computed by the SLBR method. In reaching this conclusion, both relied upon the "direct capitalization of income" method. Rather than using the statutory SLBR capitalization rate, both used a capitalization rate derived from comparable market transactions. Using this method, Esser testified that the fair market value of the shopping center was $19,674,811. Francy's opinion of value was even greater; he concluded that the fair market value of the shopping center was $22,700,000. In addition, Francy testified that the fair market value of the shopping center under the "market approach" method was $24,100,000.

The tax court held that the 1990 full cash value was to be determined solely by applying the SLBR method prescribed by A.R.S. section 42–147(B) and that there was no need to apply any "other valuation factors" pursuant to section 42–147(D). The tax court believed that it was required to use the SLBR method "absent extraordinary circumstances such as those which might exist if one or more of the component factors used in applying the method could not be determined." Specifically, it stated "that subsection (D) comes into play only when other valuation methods must be applied to determine the value of the property." Because the tax

court believed that it had "all the information necessary to compute a value using the SLBR method," it determined that "there was no reason to resort to [the county's evidence] in order to find the value."[5] Accordingly, it entered judgment reducing the full cash value of the shopping center to $12,896,672. The county appealed. We have jurisdiction pursuant to A.R.S. sections 12–2101(B) and –120.04(G).

## ANALYSIS

We conclude that when a taxpayer elects to value a shopping center pursuant to section 42–147(B), the value derived by the statutory SLBR method is the prima facie full cash value. We also conclude that section 42–147(D) gives the county the opportunity to overcome the prima facie value with evidence of "other valuation factors." Market derived adjustments to the SLBR method's fixed capitalization rate and fair market value estimates, however, are not "other valuation factors" that the reviewing body must consider under the provisions of section 42–147(D). Consequently, the county may not use either of these two approaches to overcome the prima facie value reached under section 42–147(B).

### ■ 1. Sections 42–147(B) and (D) Determine Shopping Center's Full Cash Value

In Arizona, the county assessor has a duty to assess all property at "full cash value." A.R.S. § 42–221(B). The assessor then uses a percentage of a property's full cash value to determine the property's assessed value. A.R.S. § 42–227. Taxes owed for any particular parcel are a function of the parcel's assessed valuation and the tax rate. See A.R.S. §§ 42–206 and –207. Title 42 defines full cash value in A.R.S. section 42–201(4). That section states:

*In this title,* unless the context otherwise requires:

. . . .

is if we simply could not establish one of the factors that goes into the straight line building residual method. . . . But we do have those things here. So I don't think I get beyond that."

---

5. At the end of trial, the tax court judge explained when one is to apply "other factors" to determine the value of a shopping center. He stated: "What would get me to the other factors

4. "Full cash value" for property tax purposes *is that value determined as prescribed by statute.* If no statutory method is prescribed, full cash value is synonymous with market value which means that estimate of value that is derived annually by the use of standard appraisal methods and techniques....

(Emphasis added.) In 1982, the legislature adopted section 42–147 as the statutory method to determine the full cash value of shopping centers. 1982 Ariz.Sess.Laws 713.[6]

The taxpayer argues that once it has made an election to value a shopping center according to section 42–147(B), rather than by the replacement cost less depreciation method, the use of the SLBR method is mandatory and exclusive. To support this argument, it points to the language in subsection (B) that says, "Upon a review or appeal, at the election of a taxpayer, the income method commonly known as the [SLBR] method *shall* be used in the valuation of a shopping center...." (Emphasis added.) It also cites *Arizona Dep't of Revenue v. Trico Elec. Cooperative, Inc.,* 151 Ariz. 544, 729 P.2d 898 (1986), where the supreme court held that the word "shall" in section 42–124.01 meant that the statutory formula in that section was "the exclusive method [for calculating] the full cash value of electric and gas utilities." The court also stated:

A.R.S. § 42–124.01(B) and (D) states that utility property "shall be valued" as provided therein. Unambiguous use of the word "shall" indicates that the legislature intended the statutory method of calculating full cash value prescribed therein to be mandatory and that the historical practice of using standard appraisal methods to calculate full cash value was not to be followed. We therefore hold that the DOR's valuations as calculated under A.R.S. § 42–124.01(D), rather than the [State Board of Tax Appeals'] valuations as calculated under standard appraisal methods, reflect the proper full cash value of Trico's property.

*Id.,* 151 Ariz. at 547, 729 P.2d at 901 (citation omitted).

We disagree with the taxpayer's argument. Unlike sections 42–124.01(B) and (D), in which the word "shall" is unqualified and establishes a single valuation method for utility property without exception, the word "shall" in section 42–147(B) to which the taxpayer refers is qualified. Section 42–147(B) says that "the [SLBR] method *shall* be used in the valuation of the shopping center, *subject to the provisions of subsection D.*" (Emphasis added.)

Rather than interpreting sections 42–147(B) and (D) as the taxpayer requests, we begin our analysis by looking to the language of subsection (B), which states that the SLBR method is "subject to the provisions of subsection (D)." We conclude that such language means that the value derived by the SLBR method is simply the starting point in the valuation process. In other words, when a taxpayer elects to have a shopping center valued by the SLBR method, the value arrived at through the application of such method is the prima facie full cash value of the center.

Keeping in mind that what a statute implies is as much a part of the statute as what it expresses, *Hoyle v. Superior Court In and For County of Maricopa,* 161 Ariz. 224, 227, 778 P.2d 259, 262 (App.1989), we next turn to the language in section 42–147(D). Subsection (D) states that "the reviewing body [may] find[ ] that *other valuation factors* must be applied to determine the value of the property." (Emphasis added.) We conclude that such language implies that the county may submit evidence of "other valuation factors" to overcome the prima facie full cash value derived by the SLBR method and that the reviewing body must consider such evidence. Nevertheless, if the reviewing body concludes that the county's evidence of "other valuation factors" is insufficient to overcome the prima facie full cash value established by the SLBR method, the prima facie value constitutes the full cash value of the shopping center. *See* A.R.S. § 42–147(D) ("[reviewing body] may utilize such other factors *as it finds necessary* ") (emphasis added).

6. Section 42–147 was initially denominated section 42–125. 1985 Ariz.Sess.Laws 1473.

## 2. SLBR Method—Not Market Value—Establishes Full Cash Value

The county contends that the overall focus of A.R.S. section 42–147 is to value shopping center property as closely as possible to its fair market value. It asserts that the legislature enacted section 42–147(D), which authorizes the consideration of "other valuation factors," so that the reviewing body could resolve conflicts between values derived through the SLBR method and alternative valuation methods. To support the argument that full cash value is synonymous with market value, the county points to the version of section 42–201(4) that existed when the legislature adopted the shopping center statute. That section said:

> In this chapter, unless the context otherwise requires ...
>
> 4. "Full cash value" for property tax purposes *is synonymous with market value* which means that estimate of value that is derived annually by the use of standard appraisal methods and techniques or as provided by law.

1982 Ariz.Sess.Laws 826 (emphasis added). The county argues that "[i]t is this definition of full cash value that should be looked at when attempting to determine what the legislature meant in 1982, when it adopted the shopping center statute."

We reject this argument. The newer version of section 42–201(4), which the legislature amended in 1989 to provide that full cash value is "that value determined as prescribed by statute," was in effect at the time of the taxpayer's 1990 shopping center assessment. 1989 Ariz.Sess.Laws 1115–16, 1120. Furthermore, the 1989 amendment expressly applied the new definition of full cash value in 42–201(4) to every chapter within Title 42. *Id.* at 1115. "We presume that the legislature knows of existing laws when it enacts or modifies a statute," *State v. Garza Rodriguez,* 164 Ariz. 107, 111, 791 P.2d 633, 637 (1990), and we conclude that the legislature knew that its modification of section 42–201(4) would affect the existing shopping center valuation statute. Consequently, it is only where "no statutory method [of valuation] is prescribed" that full cash value is the same as market value "derived ... by the use of standard appraisal methods...." A.R.S. § 42–201(4). Because the SLBR method set forth in 42–147(B) is a "statutory method" of valuation, the value computed by that method—not the market value—constitutes the full cash value of the shopping center.

The county also complains that the tax court's ruling places a value on the improvements that is much less than the fair market value of the improvements. According to the county, the market value of the improvements is $19.10 per square foot while the value under the tax court's ruling using the SLBR method is $3.19 per square foot. This complaint should be addressed to the legislature. We are not empowered to question the wisdom of the legislature in directing that shopping centers be valued by the SLBR method rather than by fair market value appraisal methods. *See Turner v. Superior Court In and For Pima County,* 3 Ariz.App. 414, 417, 415 P.2d 129, 132 (1966) (court will not inquire into wisdom, justice or expediency of a statutory enactment).

## ■ 3. "Other Valuation Factors" Reviewing Body Must Consider Do Not Include Fair Market Estimates Of Value

We conclude that the purpose of section 42–147(D) is to allow the county to overcome the prima facie full cash value derived by the SLBR method. Nevertheless, because the legislature's intended meaning of "other valuation factors" is unclear, we resort to the rules of statutory construction. *State v. Sweet,* 143 Ariz. 266, 269, 693 P.2d 921, 924 (1985) (if uncertain as to meaning of term within statute, court resorts to rules of statutory construction).

The county contends that we should construe the phrase "other valuation factors" to include both market adjustments to the SLBR method's fixed capitalization rate and market value derived from fair market value appraisal techniques. We disagree. When we apply the rules of statutory construction, it is clear that the phrase "other valuation factors" includes neither of these two items.

Turning first to section 42–147(B), it provides, "The capitalization rate used in [the

SLBR] method *shall* be comprised of" a discount rate of not less than ten percent, a thirty-five year recapture rate, and the property's most recent effective tax rate. (Emphasis added.) Because no provision exists in the statute for applying a different capitalization rate, the use of the word "shall" in this segment of section 42–147(B) is unqualified. In this context, therefore, the word "shall" indicates that the legislature mandated a fixed capitalization rate. *See Trico*, 151 Ariz. at 547, 729 P.2d at 901. Thus, although section 42–147(D) gives the reviewing body the discretion to use "other valuation factors" to determine the value of the property, it does not allow the reviewing body to make market rate adjustments to the fixed capitalization rate prescribed by statute.

We find support for this conclusion in the legislative history of the shopping center statute. *Rothweiler v. Superior Court of Pima County*, 1 Ariz.App. 334, 336, 402 P.2d 1010, 1012 (1965) (proper to look at history of ambiguous statute), *aff'd*, 100 Ariz. 37, 410 P.2d 479 (1966). The legislative history suggests that the primary purpose of section 42–147 was not to determine fair market value but rather to achieve stability and equality and reduce the number of shopping center valuation appeals. *See* Minutes, February 9, 1982, House Committee on Ways and Means, at 2 (HB 2369). The legislature specifically stated:

> [I]t is necessary to improve techniques for determining the full cash value of shopping centers because of the absence of sales of shopping centers in this state and because of the lack of uniformity in determining the effect of obsolescence which results primarily from the age of shopping centers and long-term leases for major tenants. The legislature further finds that *stability and equality in valuation of shopping centers are in the public interest and can be achieved by* prescribing the application of uniform cost, depreciation and obsolescence factors in the valuation of shopping centers by the replacement cost less depreciation method and *uniform capitalization rates* if the valuation method is based on the income of the property.

1982 Ariz.Sess.Laws 713 (emphasis added).

Section 42–147(B), standing alone, carries out the intent of the legislature. It provides

for a consistent approach to valuing shopping centers by requiring the use of a fixed capitalization rate comprised of the following (1) a discount rate of not less than 10%, (2) a recapture rate of thirty-five years, and (3) the property's most recent effective tax rate. A.R.S. §§ 42–147(B)(1) through (3). But allowing the county to use market derived capitalization rates to vary subsection (B)'s statutory capitalization rate is inconsistent with the legislative intent to achieve "stability and equality in valu[ing] ... shopping centers ... [through] *uniform* capitalization rates...." 1982 Ariz.Sess.Laws 713 (emphasis added). In other words, the county's efforts to use market indicators as "other valuation factors" to adjust a shopping center's full cash value renders superfluous the requirement in subsection (B) that the capitalization rate used in the SLBR method be composed of three fixed components. *State v. Arthur*, 125 Ariz. 153, 155, 608 P.2d 90, 92 (App.1980) ("Whenever possible, a statute will be given such an effect that no clause, sentence, or word is rendered superfluous, void, contradictory or insignificant."). Thus, we conclude that the language of the statute that the reviewing body may resort to "other valuation factors" does not mean that the reviewing body may adjust the SLBR method's statutory capitalization rate with a market derived capitalization rate.

Additionally, we observe that the legislature has distinguished between "methods" and "factors" in section 42–147. It chose the word "method" in both sections 42–147(A) and (B) to refer to different appraisal techniques for determining full cash value. For example, both sections mention the replacement cost less depreciation *method*, the income *method*, and the SLBR *method*. On the other hand, section 42–147(D) refers to "other valuation factors" rather than other valuation methods. "Where the legislature has specifically used a term in certain places within a statute and excluded it in others, courts will not read that term into the section from which it was excluded." *Arizona Board of Regents v. Pub. Safety Ret. Fund Mgr.*, 160 Ariz. 150, 157, 771 P.2d 880, 887 (App.

1989). Thus, we conclude that "other valuation *factors*" in 42–147(D) does not mean other valuation *methods*.

The language in section 42–201(4) buttresses our conclusion. That section provides that full cash value "is synonymous with market value ... derived annually by the use of *standard appraisal methods and techniques*" only where no statutory method of determining value exists. (Emphasis added.) Here, because section 42–147(B) prescribes the method of determining full cash value for shopping centers, such value is established by the SLBR method and not by the market. Consequently, if full cash value is to be derived through the statutory procedure set forth in section 42–147(B), the statutory value cannot be modified by the use of other fair market value *appraisal methods and techniques*. Thus, although section 42–147(D) does not tell us what the phrase "other valuation factors" means, section 42–201(4) enables us to determine that such phrase excludes standard market value appraisal methods and techniques.

Nevertheless, the county argues that the rules of statutory construction mandate that we construe section 42–147 so as to give meaning to all parts of it, including the phrase "other valuation factors" in subsection (D). According to the county, the only way that we can give meaning to this phrase is to construe it to include fair market value appraisal methods and market derived adjustments to the statutory SLBR method prescribed in 42–147(B). Otherwise, argues the county, we will have violated the statutory rules of construction by rendering the phrase "other valuation factors" in subsection (D) meaningless. Although we are unable to determine what the legislature meant by the language "other valuation factors" in subsection (D), and the taxpayers have not provided us with any workable alternative meaning, we decline to construe the statute as the county suggests. To do so would violate another rule of statutory construction—a rule specific to tax cases. That rule provides, "Tax statutes are to be strictly construed against the taxing authority and any ambiguities are to be resolved in favor of the taxpayer." *Jim Click Ford, Inc. v. City of Tucson,* 133 Ariz. 97, 98, 649 P.2d 714, 715 (App.1982).

Furthermore, to resolve this case, we need only decide what the phrase "other valuation factors" excludes. We need not define what factors qualify as "other valuation factors" or determine when the reviewing body must apply such factors to determine the value of shopping center property. Having decided that the county's evidence does not fit within the definition of "other valuation factors," we leave it to the legislature to clarify the meaning of such phrase.

### 4. Tax Court's Misinterpretation Of Statute Was Not Reversible Error

Here, after the taxpayer elected to value the shopping center by the SLBR method, the county submitted evidence to convince the tax court that the SLBR method understated the shopping center's value. The tax court refused to consider the county's evidence, stating that "all the information necessary to compute a value using the SLBR method is available, and there is no reason to resort to 'other valuation *methods*' in order to find the value." (Emphasis added.) We conclude that the tax court was partially correct; section 42–147(D) does not require the tax court to resort to other valuation *methods* in order to find the value of a shopping center. The tax court, however, was incorrect in determining that it did not need to consider section 42–147(D).

Although the tax court misinterpreted section 42–147, such error does not require reversal. An error is not grounds for reversal if it is not prejudicial. *United Cal. Bank v. Prudential Ins. Co., Etc.,* 140 Ariz. 238, 295, 681 P.2d 390, 447 (App.1983). Here, the tax court had sufficient information from which to compute a value for the shopping center using the SLBR method. That method yielded reasonably consistent results when applied by the expert witnesses for both parties: $11,641,000 according to the taxpayer's expert and $12,200,000 or $15,-950,838 when computed by the county's experts. Furthermore, the county's evidence of "other valuation factors" consisted only of values derived by fair market appraisal techniques and market adjustments to SLBR

method's fixed capitalization rate. Such evidence cannot overcome the prima facie value computed using the SLBR method prescribed by section 42–147(B). Thus, no prejudice resulted to the county.

## CONCLUSION

For the reasons stated in this decision, we affirm the tax court. The taxpayer has requested attorney's fees on appeal pursuant to A.R.S. section 12–348. We grant such fees subject to the limitations of A.R.S. section 12–348(E). The taxpayer may establish the amount of its award by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

CLABORNE and FIDEL, JJ., concur.