866 P.2d 149

**BILTMORE HOTEL PARTNERS**

v.

**MARICOPA COUNTY; Arizona Department of Revenue.**

No. TX 92–00865.

Tax Court of Arizona.

Dec. 9, 1993.

John E. Wolfinger, Phoenix, for plaintiff.

Helm & Kyle by Roberta S. Livesay and Ileen K. Keenan, Phoenix, for defendant.

## OPINION

SCHAFER, Judge.

The issue in this case is whether the 1992 valuation of the Arizona Biltmore Hotel property is too high—or too low.

The Biltmore is a quality, full-service, luxury resort hotel opened in 1929. It has 502 rooms, a 38,000+ square foot conference center, three heated swimming pools, eight lighted tennis courts, a health & fitness center, retail shops and boutiques, three restaurants and two lounges, and is adjacent to two PGA-rated championship golf courses. From 1959 through 1990 it received a five-star rating from the Mobil Travel Guide.

In mid–1991 the Biltmore underwent approximately $7,000,000 worth of renovations to its main lobby, restaurants and outdoor recreation facilities. Another $20,000,000 will be spent in the next three years to renovate the guest rooms and other facilities to return it to its previous five-star condition.

In June of 1992 Biltmore Hotel Partners (Partners) purchased the Biltmore for $61.5 million. The Partners' marketing plan anticipated an occupancy level of 63.46–68.20% and an average daily room rate (ADR) of between $162.76 and $186.37 for 1992, 1993 and 1994.[1]

For the tax year 1992, Maricopa County set the full cash value of the Biltmore, as of January 1, 1992, at $48,146,291. After the Partners purchased the property in June of 1992 they filed an appeal with this Court contesting the County's 1992 valuation. Trial to the Court was held in September of 1993.

The Partners contend that the County's full cash value of $48+ million is excessive and should be lowered to $37,078,160. The County argues $48+ is too low and should be raised to $61.5 million.

## ANALYSIS

When a valuation is appealed to the Tax Court, there is a presumption that the government's valuation is correct and lawful. A.R.S. § 42–178(B). The presumption is one of fact and may be overcome by competent evidence. *Department of Property Valuation v. Trico Electric Cooperative, Inc.*, 113 Ariz. 68, 70, 546 P.2d 804, 806 (1976). In order to overcome the presumption, a taxpayer must present sufficient " 'evidence contradicting the presumption ... from which the trial court can determine the full cash value of the property in question.' " *Department of Property Valuation v. Trico Electric Cooperative, Inc., supra*, 113 Ariz. at 69 and 70, 546 P.2d at 805 and 806 (quoting *Graham County v. Graham County Electric Coop., Inc.*, 109 Ariz. 468, 512 P.2d 11 (1973)). Likewise, the County, to overcome the presumption and have the assessed value raised, must produce enough evidence contradictory to the presumption which will allow the Court to determine the true full cash value of the property. *Ibid.*

The Tax Court may make an independent evaluation of full cash value only after two conditions are met. First, evidence must be presented to rebut the presumption. A.R.S. § 42–178(C); *Department of Property Valuation v. Trico Electric Cooperative, Inc., supra*, 113 Ariz. at 70, 546 P.2d at 806. This evidence may be comprised of the evidence used in determining the full cash value. *Department of Property Valuation v. Trico Electric Cooperative, Inc., supra*, 113 Ariz. at 70, 546 P.2d at 806. Second, the Court must make a preliminary finding that the valuation is excessive or insufficient.

Here, in an effort to overcome the presumption of correctness of the County's valuation of $48+ million, the Partners pre-

---

1. In arriving at its full cash value figure, the County's appraiser used an occupancy rate of 68% and an ADR of $170. The Partner's estimation of the cash equivalency value of the Biltmore was not broken down in a manner utilizing occupancy rates or average daily room rates.

sented the testimony of Matthew Crow, one of the Partners, Dr. Karl L. Guntermann, a professor in the Department of Business Administration at Arizona State University, Pete Zych, a tax agent, and rebuttal testimony of Mike Husij, an MAI appraiser. Through these witnesses, the Partners attempted to establish that (1) the financing obtained by the Partners for the purchase of the Biltmore was not at market interest rates or market terms; (2) an equivalent market rate for the financing received on the Biltmore purchase would have been either 14.5% or 15.4%; and (3) when an appropriate market interest rate is factored into the calculation of a cash equivalency for the Biltmore property the result is a value of only $37,078,160. Clearly this evidence contradicts the initial full cash value determined by the County. However, it was not sufficient to prove the original valuation is excessive.

Several significant flaws exist in the evidence the Partners presented. Those flaws include: an initial presumption by the Partners that the financing obtained on the Biltmore purchase was not at prevailing market rates and terms, a purported market interest rate derived from data which was not specific to the hotel-resort industry when such data was readily available, a failure to consider the $20 million loan guarantee of AOKI Corporation in calculating the value, and the inability to satisfactorily explain why a purchase price of $61.5 million was set if such price was not a reflection of the Biltmore's true value.

■ Further, and most significant, in arriving at the figure the Partners want this Court to adopt, the Partners' expert performed only a cash equivalency analysis for the Biltmore property rather than utilizing one of the three standard approaches to valuation. For purposes of establishing value for property taxes, Arizona courts have traditionally recognized only three approaches: the income approach, the cost approach, and the market or sales comparison approach. These are the three accepted approaches to valuation. *Mohave County v. Duval Corp.,* 119 Ariz. 105, 106, 579 P.2d 1075, 1076 (1978). It has been stated:

Evidence is competent for the purposes of rebutting the statutory presumption [of correctness] and of showing that the Department's valuation was excessive when it is derived by *standard appraisal methods and techniques* which are shown to be *appropriate under the particular circumstances involved.* Appraisal evidence is competent even though it is based on a different method of appraisal than that utilized by the Department, as long as the method used is shown by expert testimony to be a *standard method of appraisal. Inspiration Consolidated Copper v. Arizona Department of Revenue,* 147 Ariz. 216, 223, 709 P.2d 573, 580 (App.1985) (emphasis added). The analysis performed by the Partners' expert was not done utilizing one of the standard appraisal methods and, although it may be said the method he did use is, in some circumstances, standard and appropriate, this Court does not find it appropriate here. Therefore, the Partners' evidence does not overcome the statutory presumption of correctness. While this Court was impressed with the knowledge and experience of the Partners' witnesses, the evidence produced did not present a complete or convincing analysis of the full cash value of the Biltmore. Consequently, this Court finds that the County's initial full cash valuation of $48,146,291.00 is not excessive.

This brings us to the second issue: Is the initial full cash value by the County insufficient, thereby allowing this Court to find a full cash value higher than that initially assigned by the County?

■ To support its position that the original full cash value should be raised to $61.5 million, the County presented expert testimony and a full appraisal of the Biltmore property. The appraisal was prepared by Mr. Lawrence E. Bloom, an experienced, certified MAI appraiser and consultant. Mr. Bloom has been involved in the appraisals of over 40 large hotels and resort hotels. He performed the Biltmore appraisal after formal and informal inspections of the property, including an aerial inspection, and after a review of the Biltmore's financial and operating statements, including budgeted operating performance estimates, demographic data,

development patterns, growth and market trends in the region. Mr. Bloom evaluated the propriety of using each of the three traditional methods of valuation and actually performed both the income approach and the sales comparison approach, which yielded similar values. He did an extensive sales comparison analysis utilizing sales data specific to the hotel and resort-hotel market. In short, the evidence presented by the County through Mr. Bloom was thorough, detailed and competent to overcome the presumption of correctness of the initial $48+ million. Further, it is undisputed the Partners purchased the Biltmore property in June of 1992 for $61.5 million.

This Court finds that as of January 1, 1992, the full cash value of the Biltmore property was $61.5 million. This may or may not be merely coincidental with the purchase price the Partners agreed to pay in June of that same year.

■ Once the Court finds the original valuation of the property was deficient, the judgment shall be for the government against the taxpayer for the costs of the appeal and the taxes due on the property in excess of the amount originally levied and assessed. A.R.S. § 42–178(D)(3). Also, when a valuation is contested on appeal and a higher valuation is determined by the Court, interest at the rate of 10%, not the delinquency rate of 16%, is due on the judgment running from the date of the underpayment. *Waddell v. Mayo Foundation for Medical Education and Research,* 176 Ariz. 178, 859 P.2d 801 (Tax 1993); A.R.S. § 42–178(F).[2]

## CONCLUSION

**IT IS ORDERED** that the full cash value of the Biltmore property for 1992 be raised to $61.5 million and the tax rolls corrected accordingly. The Partners, as the owners of the Biltmore property, are **ORDERED** to pay the additional assessment of property taxes which results from the difference in the initial property valuation of $48,146.291.00 and this corrected valuation of $61.5 million,

plus interest. Finally, **IT IS ORDERED** that the Partners pay the County's costs associated with this appeal.

This opinion is not a final, appealable judgment; other orders will follow. See *Devenir Associates v. City of Phoenix,* 169 Ariz. 500, 821 P.2d 161 (1991).

---

2. From the record in this matter it appears the taxes were paid in two installments, one on April 28, 1993, and one on October 29, 1991. Therefore, interest on the underpayment shall be cal-

culated by attributing a pro rata share of the total underpayment to each installment. A.R.S. § 42–178(F).