108 P.3d 930

**SFPP, L.P., a limited partnership, Plaintiff–Appellee,**

v.

**ARIZONA DEPARTMENT OF REVENUE, an Agency of the State of Arizona; Cochise, Maricopa, Pima, Pinal, and Yuma Counties, political subdivisions of the State of Arizona, Defendants–Appellants.**

**No. 1 CA–TX 03–0015.**

Court of Appeals of Arizona, Division 1, Department T.

Feb. 25, 2005.

---

\* The Honorable George H. Foster, a judge of the Superior Court of Maricopa County, was authorized to participate as a Judge *Pro Tempore* of the Court of Appeals by order of the Chief Justice of the Arizona Supreme Court. ARIZ. CONST. art. 6, § 31.

of the Arizona Department of Revenue ("Department") that "original cost" means the original or acquisition cost to the current owner. Because we agree with the tax court, we affirm the judgment.

## I.

¶ 2 SFPP, L.P. ("Taxpayer") is a limited partnership that owns legal and equitable title to substantial petroleum pipeline property in Arizona. In March 1998, Kinder Morgan Operating Limited Partnership "D" ("Kinder Morgan") purchased the general and limited partnership interests in Taxpayer from the previous general partner, Santa Fe Pacific Pipelines, Inc., and limited partner, Santa Fe Pacific Pipeline Partners, L.P. (the "Kinder Morgan Transaction").

¶ 3 In Arizona, owners of pipelines subject to taxation must supply the Department with a report stating the information required to value the company. A.R.S. § 42–14202(A) (1999). Taxpayer complied by filing the Department's Financial Information Data Form and the Department's Statement of Original Cost Form for the tax year 2000. These documents detailed the original cost of placing the pipeline property in service. Based upon this information, the Department initially valued Taxpayer's pipeline property at $121,768,000 for property tax purposes.

Paul D. Bancroft & Associates, By Paul D. Bancroft, James M. Susa, Tucson, and Charlton & Glover, By Martin Grayson Charlton, Roswell, Georgia, Attorneys for Plaintiff-Appellee.

Terry Goddard, Attorney General, By Frank Boucek, III, Assistant Attorney General, Phoenix, Attorneys for Defendants-Appellants.

## OPINION

GEMMILL, Judge.

¶ 1 Arizona Revised Statutes ("A.R.S.") section 42–14204 (Supp.2003) prescribes the method of computing the valuation of pipelines for property tax purposes in Arizona. This appeal requires us to interpret the meaning of "original cost" as used in A.R.S. § 42–14204. The Arizona Tax Court decided that "original cost" in this statute means the original cost of placing the pipeline assets in service. The tax court rejected the position

¶ 4 Taxpayer also filed a copy of its Federal Energy Regulatory Commission ("FERC") Form 6 with the Department. This form reported the value of the carrier asset accounts, as adjusted to reflect the Kinder Morgan Transaction. The Department, utilizing its interpretation of "original cost" in § 42–14204 as the acquisition cost to the new owners of Taxpayer, then re-valued the pipeline property at $232,227,000.

¶ 5 Taxpayer filed an administrative appeal to the State Board of Equalization, contending that the correct value under the § 42–14204 formula was $117,000,000. When the State Board of Equalization affirmed the Department's determination, Taxpayer appealed by filing a complaint in the Arizona Tax Court. The complaint names the Depart-

ment as a defendant, along with the counties within which the pipeline assets are located.[1]

¶ 6 Taxpayer moved for partial summary judgment on the meaning of "original cost" in A.R.S. § 42–14204. The Department filed a cross-motion for summary judgment and also moved to strike two affidavits filed in support of Taxpayer's motion.

¶ 7 The tax court agreed with Taxpayer's interpretation of "original cost" in § 42–14204 and granted Taxpayer's motion for partial summary judgment.[2] The parties stipulated to alternative values for the property contingent on the determination of which definition of "original cost" would be used. The tax court entered final judgment based on its conclusion that "original cost" is the cost of placing the assets into service. The Department appeals, seeking a reversal of the tax court's ruling.

## II.

■ ¶ 8 The proper interpretation of A.R.S. § 42–14204 is a question of law that we review *de novo*. *See Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996); *Maricopa County v. Kinko's Inc.*, 203 Ariz. 496, 498, ¶ 4, 56 P.3d 70, 72 (App.2002). "When interpreting a statute, we attempt to fulfill the intent of the drafters, and we look to the plain language of the statute as the best indicator of that intent." *O'Connor v. Hyatt*, 207 Ariz. 409, 411, ¶ 4, 87 P.3d 97, 99 (App.2004); *see State v. Mitchell*, 204 Ariz. 216, 218, ¶ 12, 62 P.3d 616, 618 (App.2003). Additionally, "[I]n the tax field, we liberally construe statutes imposing taxes in favor of taxpayers and against the government." *State ex rel. Arizona Dept. of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 10, 88 P.3d 159, 161 (2004). And, we resolve any ambiguities in favor of the taxpayer. *People's Choice TV Corp. v. City of Tucson*, 202 Ariz. 401, 403, ¶ 7, 46 P.3d 412, 414 (2002).

## III.

■ ¶ 9 Property in Arizona is valued for property tax purposes at its "full cash value." *See Business Realty of Ariz., Inc. v. Maricopa County*, 181 Ariz. 551, 553, 892 P.2d 1340, 1342 (1995). From statehood until 1989, Arizona tax statutes explicitly defined "full cash value" for property taxation as "synonymous with market value." *Id.* In 1989, the legislature modified the traditional market value approach for specific categories of property by enacting statutory methods of computing the property values. *Id.*; 1989 Ariz. Sess. Laws, ch. 259, § 1. Now, "full cash value" is determined by a statutory method of valuation or, if no statutory method is prescribed, by use of standard market value appraisal methods:

> "Full cash value" for property tax purposes means the value determined as prescribed by statute. If no statutory method is prescribed, full cash value is synonymous with market value which means the estimate of value that is derived annually by using standard appraisal methods and techniques.

A.R.S. § 42–11001(5) (Supp.2003).

¶ 10 The legislature has prescribed statutory methods of valuing various centrally assessed properties such as utilities, mines, and pipelines. *See generally* A.R.S. §§ 42–14001 to –14503 (1999 & Supp.2003). Arizona law requires the Department to determine annually the value of property owned by each pipeline operating in this state. A.R.S. §§ 42–14201, –14203(A) (1999 & Supp.2003). Section 42–14204 provides the method used for computing the value of pipeline property, and both parties agree that this section is applicable to Taxpayer's pipeline property in Arizona.

¶ 11 The statutory method of valuing pipeline property requires the Department to determine the "base value" of a pipeline,

---

1. The counties named in the original complaint are Cochise, Graham, Maricopa, Pima, Pinal, and Yuma. The parties later stipulated to dismiss Graham County from the action.

2. The court's order did not specifically rule on the Department's motion to strike. In a subsequent order, the court clarified that it had not relied on the affidavits that the Department wanted stricken, and the court declared that the Department's motion to strike was moot in light of the court's substantive ruling. This court has, similarly, not relied on those affidavits.

which is usually the final full cash value of the system plant in service in the preceding valuation year. *See* A.R.S. § 42–14204(F)(1), (H)(3). The Department must compute the "value change factor," which is the average of the "income change factor" and the "asset change factor." *See* A.R.S. § 42–14204(F)(2), (H)(2), (H)(9), (H)(15). Then "base value" is multiplied by the "value change factor" to obtain the "preliminary system value." *See* A.R.S. § 42–14204(F)(3). The value of "construction work in progress, materials and supplies, noncapitalized leased operating property and gas stored underground" is added to the "preliminary system value." *See* A.R.S. § 42–14204(F)(4). The "allocation factor" is then computed and the "preliminary system value" is multiplied by the "allocation factor" to determine the final valuation. *See* A.R.S. § 42–14204(F)(5)–(6), (H)(1).

¶ 12 The calculation of "system net book value of plant" is crucial in determining the "asset change factor" and therefore the "value change factor." Section 42–14204(H)(13) defines "[s]ystem net book value of plant" as "the *original cost of the system plant in service* less the related accumulated provision for depreciation." (Emphasis added.) The crux of this dispute is the interpretation of "original cost."

¶ 13 While fifteen other technical terms are specifically defined in § 42–14204(H), "original cost" is not. The Department understands original cost to mean the acquisition cost of the partnership interest that Taxpayer was required to capitalize pursuant to accounting rules applicable to the Kinder Morgan Transaction. In contrast, Taxpayer and the tax court interpret original cost to mean the cost of the tangible property to the first person who placed it into service for use as a pipeline.

¶ 14 Although "original cost" is not specifically defined, we are not left without guidance. The legislature provided interpretive guidance in two ways: first, by specific reference to FERC Uniform System of Accounts ("USOA") definitions; and, second, by the actual words used in the statute, when considered as a whole. In addition, if the term

"original cost" remains ambiguous after considering this legislative guidance, then we must construe it in favor of the taxpayer. *See Capitol Castings*, 207 Ariz. at 447, ¶ 10, 88 P.3d at 161; *People's Choice TV*, 202 Ariz. at 403, ¶ 7, 46 P.3d at 414.

¶ 15 Section 42–14204(G), A.R.S., provides that:

All terms and applications of terms shall be interpreted as nearly as possible, under the circumstances, according to the federal energy regulatory commission uniform system of accounts for pipelines in effect on January 1, 1989.

Accordingly, we have examined the FERC USOA definitions in effect on January 1, 1989. The FERC promulgated one USOA for oil pipelines and another for gas pipelines. The USOA for gas pipelines contains a definition of "original cost" that coincides with the position of Taxpayer and the ruling of the tax court:

"Original cost," as applied to gas plant, means the cost of such property to the person first devoting it to public service.

18 C.F.R. pt. 201, subpt. 26 (1988). The USOA for oil pipelines does not define "original cost" but does define "cost" in language that is consistent with the Department's position:

"Cost" means the amount of money actually paid for property or services or the current cash value of the consideration given when it is other than money.

18 C.F.R. pt. 352, subpt. 11 (1988).

¶ 16 Taxpayer's pipelines are used for transmission of oil, not gas. The Department therefore contends that the definition of "original cost" in the USOA for gas pipelines is not applicable and that we should, instead, apply the definition of "cost" from the USOA for oil pipelines. In contrast, Taxpayer argues that because A.R.S. § 42–14204(G) refers us, for definitional assistance, to the "federal energy regulatory commission uniform system of accounts for pipelines in effect on January 1, 1989," we should apply the only specific definition of "original cost" found in these regulations.[3]

---

**3.** Taxpayer also cites the FERC definition of

"original cost" found in 18 C.F.R. pt. 360, per-

¶ 17 The Department's argument would lead to a different definition of "original cost" depending on whether the pipelines being valued carried oil or gas. But the parties have not cited us to, nor has our research revealed, any reason to believe that our legislature intended the statutory method of computing the value of pipelines in Arizona to produce different results for gas pipelines compared to oil pipelines.

¶ 18 Having undertaken the inquiry mandated by § 42–14204(G), we conclude that the FERC USOA for pipelines does not provide us with dispositive guidance regarding the intended meaning of "original cost" in § 42–14204.[4]

¶ 19 We next look to the specific language used—and not used—by the legislature in § 42–14204. The use of "original" in the term "original cost" is significant. The word "original," when used as an adjective, commonly means "of or pertaining to the origin, beginning, or earliest stage of something; ... initial, first, earliest." 10 Oxford English Dictionary 933–34 (2d ed.1989); *see also* The American Heritage Dictionary of the English Language 927 (1970) ("of or pertaining to the beginning of something; initial; first."). When the ordinary meaning of "original" is added to modify "cost," the resulting meaning of "original cost" is the cost to the person first devoting the property to service. When a term is undefined by the legislature, we strive to apply the plain and ordinary meaning of the words used unless a contrary intent is expressed by the legislature. *State v. Hoggatt,* 199 Ariz. 440, 443, ¶ 8, 18 P.3d 1239, 1242 (App.2001). The ordinary meaning of "original cost of the system plant in service," *see* § 42–14204(H)(13), points to the

initial or first cost of placing the plant in service.

¶ 20 Additionally, it is significant that § 42–14204 does not define or describe "original cost" with reference to the current owner. If the legislature intended "original cost" to mean the cost to the current owner, it would have been very easy to express that intent. The absence of such language supports the conclusion that "original cost" is most likely intended by the legislature to mean the cost of such property to the person first devoting it to public service.

¶ 21 The definition of "base value" in § 42–14204(H)(3) provides additional support:

The "base value" is the final full cash value of the system plant in service in the preceding valuation year.... *If ownership changes, the base value shall be transferred to the new owner.*

(Emphasis added.) Although not conclusive, the fact that the "base value" is automatically transferred to the new owner is consistent with "original cost" meaning the cost to the owner first placing the assets in service.

¶ 22 Finally, our decision regarding the proper interpretation of "original cost" as used in § 42–14204 is also supported by the principle that ambiguous terms in tax legislation must be construed in favor of the taxpayer. *See Capitol Castings,* 207 Ariz. at 447, ¶ 10, 88 P.3d at 161; *People's Choice TV,* 202 Ariz. at 403, ¶ 7, 46 P.3d at 414.[5]

¶ 23 The Department objects to this interpretation of "original cost" because the resulting valuations may deviate from traditional market value, particularly if the assets are rapidly appreciating. The Department

---

4. taining to reporting of data for initial pipeline valuation: "Original cost means the actual cost of construction or acquisition of property to the first person or corporation dedicating such property to public use." 18 C.F.R. pt. 360.6 (1988). The Department correctly points out that this definition is not technically part of the FERC USOA for pipelines, and we have therefore not relied upon this definition in reaching our decision regarding the meaning of "original cost" in § 42–14204. We do note, nonetheless, that this definition appears applicable to pipeline owners—both gas and oil—and is essentially identical to the definition of "original cost" found in the USOA for gas pipelines.

4. We do not interpret the legislature's guidance in A.R.S. § 42–14204(G) as requiring that we base our final conclusion on the FERC USOA definitions if those definitions do not, as here, provide a definitive resolution.

5. The term "original cost" is ambiguous because "well-informed persons may reasonably disagree as to its meaning." *See Higginbottom ·v. State,* 203 Ariz. 139, 142, ¶ 13, 51 P.3d 972, 975 (App. 2002) (citing 2A Norman J. Singer, *Statutes and Statutory Construction* § 45.02, at 17 (6th ed. rev.2000)).

points out that the Arizona Supreme Court in *Business Realty* explained that the 1989 property tax amendments "specifically identified and reaffirmed the general traditional approach using market value as the standard goal for tax valuation." 181 Ariz. at 553, 892 P.2d at 1342.

¶ 24 In *Business Realty,* the supreme court considered whether the legislature intended to include market value concepts when valuing shopping centers under the statutory provisions pertaining to taxation of shopping centers. The court repeatedly cited the pipeline valuation statute as an example of the legislature's intent to utilize a formula as the exclusive method of determining full cash value of pipelines for property tax purposes:

> The Arizona Legislature has rarely used its power to prescribe an alternative to the fair market value concept of full cash value for tax valuation purposes; . . . For some examples, see A.R.S. § 42–144.02 (utility companies); § 42–144.01 (pipelines); . . . [6]

*Id.* at 554 & n. 4, 892 P.2d at 1343 & n. 4. The court contrasted the market value approach with statutory formulas such as § 42–14204:

> We believe, then, that the text of the [shopping center] statute does not ignore market concept and theory when determining the value of shopping centers. Instead, it specifies a sequence for using recognized techniques to estimate fair market value in tax assessment. If the legislature intended otherwise, lawmakers would have chosen a valuation method that completely disregarded market value and specified the formula to be followed, instead of allowing the reviewing body to estimate the final value when "necessary" by use of "other valuation factors." *Cf.* § 42–144.01 (special valuation system for pipeline companies); § 42–144.02 (special valuation method for gas and electric utility district property); . . .

*Id.* at 557, 892 P.2d at 1346. The court further emphasized the distinction between market value appraisal methods and statutory formulas:

> We cannot envision, and the record discloses no reason, why the legislature would have offered owners of shopping center property the unique tax treatment afforded owners of such peculiar property as mines, utilities, and pipelines, for which there is, practically speaking, little or no market at all and which therefore require the use of convoluted mathematical formulae just to make a reasonable estimate of their value for taxation purposes. *A good example is the pipeline valuation statute.*

*Id.* at 560, 892 P.2d at 1349 (emphasis added) (citation omitted). Accordingly, we do not think that *Business Realty* directs us to judicially inject market value concepts into a statutory method of valuation when, as here, the language of the legislature is to the contrary.

¶ 25 The Department similarly argues that we should not interpret "original cost" as the cost to the person who first placed the assets into public service because that is essentially a ratemaking definition. Instead, the Department contends that a market-value-driven property tax definition should be used, in which "original cost" would mean the acquisition cost to the current owner. As we have already indicated, however, the "full cash value" of pipeline property in Arizona is determined by the statutory formula prescribed in § 42–14204 rather than by traditional market value methods. *See* A.R.S. § 42–11001(5).

¶ 26 The Department may wish to address its arguments to the legislature. The choice of appropriate statutory language rests with the legislature, and therefore, it is up to the legislature, if it so desires, to amend or clarify the meaning of "original cost" in § 42–14204. *See Nordstrom Inc. v. Maricopa County,* 207 Ariz. 553, 557–58, ¶ 15, 88 P.3d 1165, 1169–70 (App.2004).

## IV.

¶ 27 We conclude that the tax court correctly interpreted "original cost" in A.R.S.

---

**6.** A.R.S. § 42–144.01 (repealed 1997) is the predecessor of § 42–14204, and § 42–144.02 (re-   pealed 1997) is the predecessor of § 42–14154 (Supp.2003).

§ 42–14204, and we affirm the judgment of the tax court.

CONCURRING: DANIEL A. BARKER, Presiding Judge, and PATRICIA K. NORRIS, Judge.

