161 P.3d 620

**ARIZONA DEPARTMENT OF REVENUE, an agency of the State of Arizona, Plaintiff–Appellee,**

v.

**QUESTAR SOUTHERN TRAILS PIPELINE COMPANY, a Utah corporation, Defendant–Appellant,**

**Questar Southern Trails Pipeline Company, a Utah corporation, Plaintiff–Appellant,**

v.

Arizona Department of Revenue, an agency of the State of Arizona; Apache County; Coconino County; Mohave County; Navajo County, Defendants–Appellees.

No. 1 CA–TX 06–0015.

Court of Appeals of Arizona, Division 1, Department T.

July 19, 2007.

Terry Goddard, Attorney General, By Frank Boucek III, Assistant Attorney General, Kenneth J. Love, Assistant Attorney General, Phoenix, Attorneys for Appellees.

Fennemore Craig, P.C., By Paul J. Mooney, Jim L. Wright, Phoenix, Attorneys for Appellant.

## OPINION

IRVINE, Judge.

¶ 1 This appeal arises out of cross-motions for summary judgment on whether the Arizona Department of Revenue (the "Department") correctly valued property owned by Questar Southern Trails Pipeline Co. ("Taxpayer") for the 2004 and 2005 tax years. Finding no genuine issue of material fact or error of law, we affirm the grant of summary judgment to the Department. In addition, we affirm the tax court's award of interest on the judgment.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Taxpayer is a Utah corporation and operates a pipeline in Arizona. It owns legal and/or equitable title to property in Mohave County, Coconino County, Navajo County and Apache County.

¶ 3 Applying the property valuation formula in Arizona Revised Statutes ("A.R.S.") section 42–14204 (2006),[1] the Department assessed the full cash value of Taxpayer's property at $70,580,000 for the 2004 tax year. Taxpayer appealed the valuation to the State Board of Tax Equalization ("SBOE"), arguing that the Department should have reduced the valuation to $32,602,490. The SBOE set the full cash value at $55,200,000.

¶ 4 The Department appealed the SBOE's valuation to the tax court and Taxpayer likewise appealed the calculation pursuant to A.R.S. §§ 42–16203 and 42–16207 (2006),[2] naming as defendants the Department and counties in which its property lies. During

---

1. We cite to the current version of A.R.S. § 42–14204, which is essentially the same as the statute in effect at the time of this dispute.

2. We cite to the current versions of A.R.S. §§ 42–16203 and –16207, which are essentially the same as the statutes in effect at the time of this dispute.

the pendency of the case, the Department valued Taxpayer's property at $69,688,000 for the 2005 tax year. Rather than pursuing an appeal with the SBOE, Taxpayer filed a direct appeal to the tax court by amending its complaint in the 2004 action. The tax court ordered the cases consolidated in accordance with the parties' stipulation.

¶ 5 The Department moved for summary judgment on the basis that it had properly applied A.R.S. § 42–14204. Taxpayer filed a cross-motion for partial summary judgment claiming that the Department should have accounted for external obsolescence in determining the value of the property. When the Department disputed the point, Taxpayer submitted an appraisal report with its reply. The tax court granted summary judgment to the Department, upheld its valuations and declined to strike Taxpayer's exhibit.

¶ 6 On January 25, 2006, the Department lodged a judgment with the tax court. The parties then litigated Taxpayer's objection to the judgment term requiring it to pay interest on the reinstated full cash value for the 2004 tax year from the date of underpayment.[3] The tax court ruled for the Department. Taxpayer timely filed this appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

### I. As a Matter of Law, the Department Correctly Valued Taxpayer's Property.

¶ 7 We review de novo the tax court's grant of summary judgment. *Wilderness World, Inc. v. Dep't of Revenue,* 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995). This case turns on the interpretation of statutory provisions; a question of law that we review de novo. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). We strive to "discern and give effect to legislative intent." *People's Choice*

*TV Corp. v. City of Tucson,* 202 Ariz. 401, 403, ¶ 7, 46 P.3d 412, 414 (2002).

### A. The Formula in A.R.S. § 42–14204 Provides the Exclusive Method of Valuation.

¶ 8 Under Article 9, Section 11, of the Arizona Constitution, the legislature prescribes "the manner, method and mode of assessing, equalizing and levying taxes in the State of Arizona." The legislature taxes property based upon full cash value and it provided in former A.R.S. § 42–11001(5) (2003): [4]

> "Full cash value" for property tax purposes means the value determined as prescribed by statute. *If no statutory method is prescribed,* full cash value is synonymous with market value which means the estimate of value that is derived annually by using standard appraisal methods and techniques. Full cash value is the basis for assessing, fixing, determining and levying secondary property taxes.

(Emphasis added.)

¶ 9 Title 42, Article 5, of the Arizona Revised Statutes provides the method for valuing pipeline property. The statutes require the Department to determine the value of property owned by each pipeline operating within state borders. A.R.S. §§ 42–14201 to –14204. The Department begins the process by mailing all pipeline companies an annual property tax reporting form. A.R.S. § 42–14202. Each company must submit the completed form to the Department on or before April 1 of the valuation year. A.R.S. § 42–14202(A). Pipeline companies must report the cost of all their property as well as income and other information. A.R.S. §§ 42–14202, –14204.

¶ 10 In A.R.S. § 42–14204(F)(1), the legislature directs the Department to determine the base value of the pipeline, which is "the final full cash value of the system plant in service." A.R.S. § 42–14204(H)(3). The De-

---

3. Taxpayer did not owe interest for the 2005 tax year because before directly appealing to the tax court it paid the full amount assessed by the Department's valuation, as required by A.R.S § 42–16210.

4. We cite to the previous version of this statute because the current version adds language that was not in effect at the time of this dispute. *See* 2006 Ariz. Sess. Laws, ch. 143, § 2. The current version of this statute can be found at A.R.S. § 42–11001(6) (Supp.2006).

partment must also compute the value change factor—"the average of the income change factor and the asset change factor"— then multiply that figure by the base value to obtain the "preliminary system value." A.R.S. § 42–14204(F)(2), (3) and (H)(15). To complete the valuation, the Department adds to the preliminary system value the cost of materials and supplies, leased property, gas stored underground and the construction work in progress. A.R.S. § 42–14204(F)(4).

¶ 11 The Department used the information from Taxpayer to determine its property value for the 2004 and 2005 tax years, including both the original and the revised data. Taxpayer does not challenge the accuracy of the Department's calculation of value pursuant to the statutory formula. Instead, it asks the Department to also factor in obsolescence using standard appraisal methods.

¶ 12 "Obsolescence, which is a form of depreciation, is defined as a loss of value and is classified as either functional or economic." *Inland Steel Co. v. State Bd. of Tax Comm'rs*, 739 N.E.2d 201, 210 (Ind. T.C. 2000) (citations omitted). Taxpayer complains of economic obsolescence, which is "a loss in value caused by forces external to the property and outside the control of the property owner." *Magna Inv. & Dev. Corp. v. Pima County*, 128 Ariz. 291, 293, 625 P.2d 354, 356 (App.1981). Obsolescence is a factor when applying the standard appraisal methods, including the cost approach, the income approach and comparable sales approach. *See generally id.* As the tax court observed, nothing in the statutory formula requires consideration of obsolescence.

¶ 13 In *Arizona Department of Revenue v. Trico Electric Cooperative*, 151 Ariz. 544, 729 P.2d 898 (1986), the Department valued an electric utility's property according to a statutory formula. The utility, Trico, complained that the Department had not used standard appraisal methods and techniques to calculate obsolescence after applying the statutory formula. *Id.* at 546, 729 P.2d at 900. Ultimately, the Arizona Supreme Court upheld the value produced by the statutory formula, explaining that "the legislature intended the statutory formula ... to be the exclusive method used to calculate full cash value of

electric and gas utilities." *Id.* at 547, 729 P.2d at 901. The very definition of "full cash value" states that it is to be determined by statute. *Id.* at 546, 729 P.2d at 900 (citing former A.R.S. § 42–201(4), now A.R.S. § 42–11001(6)).

¶ 14 This case parallels *Trico*. Like the *Trico* taxpayer, defendant Taxpayer is contesting the value derived from the statutory formula specifically enacted for a species of centrally valued property. Both this taxpayer and the *Trico* taxpayer complained that the Department had failed to account for obsolescence and had not used standard appraisal methods. As in *Trico*, the result here must be that the statutory formula is the exclusive method for calculating full cash value.

¶ 15 In an effort to distinguish *Trico*, Taxpayer claims that *Trico* did not involve a taxpayer claiming that its property value exceeded market value. Taxpayer argues *Trico* involved a claim that a formula valued property of for-profit (or investor-owned) utilities more favorably than non-profit (or cooperative-owned) utilities. A close reading of *Trico*, however, reveals that the taxpayer raised two arguments: (1) the Department overvalued the property by failing to account for obsolescence and (2) equitable considerations required a different result because other utilities received more favorable values. 151 Ariz. at 546–49, 729 P.2d at 900–03. In seeking an adjustment for obsolescence, Trico was claiming—just as Taxpayer does— that the property's value exceeded market value. *Id.* at 546, 729 P.2d at 900.

¶ 16 Taxpayer also relies on *Business Realty of Arizona, Inc. v. Maricopa County*, 181 Ariz. 551, 892 P.2d 1340 (1995) and *SFPP, L.P. v. Arizona Department of Revenue*, 210 Ariz. 151, 108 P.3d 930 (App.2005). We find that neither case requires a deviation from the statutory formula. In *SFPP*, we distinguished *Business Realty* and rejected the argument that pipeline property is determined by traditional market value methods and not by statute. 210 Ariz. at 156, ¶ 24, 108 P.3d at 935. The Department argued that the statutory term "original cost" should mean the cost to the current owner of the property, which would provide a closer

approximation to market value than construing it to mean the cost when the property was first placed in service. *Id.* ¶ 25, 108 P.3d 930. It made this argument in the context of interpreting a term within the statute, not in advocating a deviation from the statutory formula. In *SFPP,* we held that *Business Realty* did not direct this court "to judicially inject market value concepts into a statutory method of valuation when, as here, the language of the legislature is to the contrary." *Id.* ¶ 24, 892 P.2d 1340.

■ ¶ 17 Because the statutory valuation plainly provides the method of valuation for pipelines, we agree with the tax court's ruling that the Department did not need to use obsolescence in its valuation process.

### B. The Legislative History of A.R.S. § 42–14204 Supports the Tax Court's Ruling.

¶ 18 Taxpayer contends that the legislative history of A.R.S. § 42–14204 supports consideration of obsolescence. We conclude the opposite is true.

¶ 19 Prior to enactment of the statutory formula in 1980, the Department valued pipelines using standard appraisal methods. *Trico,* 151 Ariz. at 546–47, 729 P.2d at 900–01. In enacting the statute, the legislature turned away from the stock market approach to develop a method of value that was more predictable and objective. S.B. 1132, 39th Leg., 1st Reg. Sess., Minutes of Comm. on Finance at 2 (Ariz. Feb. 13, 1989). At the time of its enactment, the pipeline industry supported the bill, thereby negating Taxpayer's argument that the industry would not support a method that did not account for obsolescence. *Id.* at 4.

¶ 20 Taxpayer contends that the valuation arrived at cannot exceed market value, which it insists is the case here. It points out that in 2006 the legislature amended former A.R.S. § 42–11001(5) to redefine full cash value:

6. "Full cash value" for property tax purposes means the value determined as prescribed by statute. If no statutory method is prescribed, full cash value is synonymous with market value which means the estimate of value that is derived annually by using standard appraisal methods and techniques.... *Full cash value shall not be greater than market value regardless of the method prescribed to determine value for property tax purposes.*

A.R.S. § 42–11001(6) (Supp.2006); 2006 Ariz. Sess. Laws, ch. 143, § 2 (emphasis supplied for new text).

¶ 21 Even assuming that Taxpayer's assertion about the property's valuation exceeding market value is correct,[5] we still must affirm. The effective date for A.R.S. § 42–11001(6) was September 21, 2006. Because the bill does not state that it is retroactive, there is no basis to construe this statute as applying retroactively to the 2004 and 2005 tax years. *See Bouldin v. Turek,* 125 Ariz. 77, 78, 607 P.2d 954, 955 (1979).

¶ 22 Moreover, we cannot agree that this new statute is a clarification or provides persuasive evidence that market value has always been a consideration when applying statutory formulas. In bill form, the provision stated that it modifies the definition of full cash value. *See* Committee on Ways and Means, House Bill Summary of H.B. 2821, 47th Leg., 2d Reg. Sess., at 1 (Ariz. April 12, 2006). Additionally, the legislative proposal in 2006 that S.B. 1543 add a depreciation provision to A.R.S. § 42–14204 shows that the prior version did not include one. Thus, the legislative history supports the tax court's ruling.

### C. A.R.S. § 42–14003 Does Not Support Taxpayer's Argument.

¶ 23 Taxpayer nevertheless contends that A.R.S. § 42–14003(A) (2006)[6] requires the Department to account for obsolescence. The statute provides:

In determining valuation under this chapter the department shall consider all addi-

---

5. Our resolution of this issue obviates the need to resolve whether Taxpayer made a timely submission of competent evidence on this point.

6. We cite to the current version of A.R.S. § 42–14003, which is essentially the same as the statute in effect at the time of this dispute.

tional information including information that is presented in an appeal and information that is otherwise available.

¶ 24 In taxpayer's view, obsolescence constitutes additional information for the Department to consider. We "seek to harmonize related statutes ... and 'aim to achieve consistency among them' within the context of the overall statutory scheme." *State v. Fell*, 203 Ariz. 186, 188, ¶ 6, 52 P.3d 218, 220 (App.2002) (quoting *Bills v. Ariz. Prop. & Cas. Ins. Guar. Fund*, 194 Ariz. 488, 494, ¶ 18, 984 P.2d 574, 580 (App.1999)). We are unable to harmonize Taxpayer's interpretation of A.R.S. § 42–14003(A) with A.R.S. § 42–14204. Taxpayer interprets A.R.S. § 42–14003(A) to require the Department to use whatever information a taxpayer provides, even if it is irrelevant to the statutory formula in A.R.S. § 42–14204. We cannot square this approach with A.R.S. § 42–14204 or *Trico*.

¶ 25 When the legislature wants the Department to consider obsolescence, it has provided express instructions. For example, A.R.S. § 42–14156(A)(4) (2006) provides that an owner of electric generation facilities "may submit documentation showing the need for, and the department shall consider, an additional adjustment to recognize obsolescence using standard appraisal methods and techniques." Similarly, A.R.S. § 42–14254(B)(4) (2006) states that the Department shall "[a]llow additional obsolescence if supported by market evidence" in valuing flight property. The omission of an obsolescence provision from A.R.S. § 42–14204 and its inclusion in other statutes indicates that the legislature did not intend it to be applied in A.R.S. § 42–14204.

¶ 26 Moreover, it is fundamental that the terms of a specific valuation statute like A.R.S. § 42–14204 control over general statutes like A.R.S. § 42–14003. *See Ruth Fisher Elementary Sch. Dist. v. Buckeye Union High Sch. Dist.*, 202 Ariz. 107, 112, ¶ 21, 41

P.3d 645, 650 (App.2002). Because A.R.S. § 42–14204 does not incorporate consideration of obsolescence, the Department cannot consider it under A.R.S. § 42–14003. Finally, we must give great weight to the agency's long-standing interpretation of these statutes. *See Police Pension Bd. v. Warren*, 97 Ariz. 180, 398 P.2d 892 (1965).[7] Based on legislative intent, statutory language and case law, we do not find Taxpayer's argument to be persuasive.

### D. Taxpayer Has Waived the Uniformity Argument.

¶ 27 Taxpayer alternatively argues that the tax court's decision violates uniformity principles. Taxpayer, however, did not raise this issue in the tax court, so we decline to consider it. *See Ness v. W. Sec. Life Ins. Co.*, 174 Ariz. 497, 501, 851 P.2d 122, 126 (App.1992).

### II. Taxpayer Must Pay Interest for 2004 Taxes Starting from the Date of Underpayment.

¶ 28 Taxpayer also challenges the tax court's decision to award interest starting from the date of underpayment. This argument raises statutory construction issues, which we review de novo. *Canon*, 177 Ariz. at 529, 869 P.2d at 503.

¶ 29 Arizona Revised Statutes § 42–16214 provides:

A. If judgment is awarded to a taxpayer who paid the taxes to the county treasurer:

. . . .

3. Interest at the legal rate on the overpayment or underpayment is payable from the date of overpayment or underpayment. For the purpose of computing interest under the judgment, if the tax was paid in installments, a pro rata share of the total overpayment or underpayment is considered to be attributable to each installment.

---

7. We decline to consider the unpublished decisions cited by Taxpayer. *See* Ariz. R. Civ.App. P. 28(c). The exceptions to Rule 28 do not apply. Taxpayer also asks us to take judicial notice of cases before the Superior Court. We typically do not take judicial notice of Superior Court case files that have not been forwarded to us. *See*

*Hackin v. First Nat'l Bank of Ariz.*, 5 Ariz.App. 379, 384, 427 P.2d 360, 365 (1967). In any case, the State is entitled to settle an issue with one taxpayer and litigate it with another. *Aida Renta Trust v. Dep't of Revenue*, 197 Ariz. 222, 236, ¶ 45, 3 P.3d 1142, 1156 (App.2000).

¶ 30 At first blush, the statute would seem to award interest only when judgment is awarded to Taxpayer. As the Department points out, however, the statute also refers to underpayment. Judgments in taxpayers' favor will almost never involve allegations of underpayment. Taxpayers file lawsuits to assert claims of overpayment to obtain refunds, or to challenge an unpaid assessment. Construing the statute to apply only to taxpayers would make the underpayment term superfluous and prevent us from giving effect to all the statute's terms. *See Cont'l Bank v. Ariz. Dep't of Revenue,* 131 Ariz. 6, 8, 638 P.2d 228, 230 (App.1981) ("Statutes should be interpreted, whenever possible, so that no clause, sentence, or word is rendered superfluous, void, contradictory, or insignificant."). Therefore, the word "underpayment" creates an ambiguity requiring us to resort to the legislative history.

¶ 31 Prior to 1996, A.R.S. § 42–16214, along with §§ 42–16212 and –16213, were embodied in A.R.S. § 42–178. *See* 1996 Ariz. Sess. Laws, ch. 166, § 4, effective July 20, 1996. That statute was titled "Hearing of appeal; judgment; enforcement; correction of assessment roll." The specific predecessor provisions of A.R.S. § 42–16214 were A.R.S. § 42–178(F)(1)–(3) and (G). *Id.* Former A.R.S. § 42–178(F)(3) dealt with the consequences of judgments in favor of and against a taxpayer, providing that interest on the "overpayment or underpayment shall be payable from the date of overpayment or underpayment." *Id.*

¶ 32 Meanwhile, former A.R.S. § 42–178(D)(3) provided that a court finding of insufficient valuation created a judgment that was a lien upon the real and personal property of the appellant as though "the assessment had originally been in the amount of the judgment." Because the legislature intended "solely to recodify the existing statute law of taxation" in Arizona without changing its interpretation or construction, the judgment here reverted to the date of assessment and interest is payable from the date of underpayment. 1997 Ariz. Sess. Laws, ch. 150, § 175(A), (C).

¶ 33 *Trico* illustrates this point. Applying the predecessor statute A.R.S. § 42–178(E), the Arizona Supreme Court held that interest was due on the taxpayer's underpayment of taxes from the date of underpayment. *Trico,* 151 Ariz. at 550, 729 P.2d at 904. Thus, the taxpayer owed interest at the legal rate "on additional tax assessments resulting from reinstatement of the DOR's full cash values." *Id.; accord Biltmore Hotel Partners v. Maricopa County,* 177 Ariz. 167, 170, 866 P.2d 149, 152 (Ariz. T.C.1993) (holding that when the court raises the full cash value of property, interest runs from the date of underpayment). Accordingly, the tax court correctly ordered Taxpayer to pay interest on its 2004 taxes from the date of underpayment.

## CONCLUSION

¶ 34 We affirm the tax court's judgment in all respects. In addition, we deny Taxpayer's requests for costs and attorneys' fees incurred during this appeal.

CONCURRING: MAURICE PORTLEY, Presiding Judge, and DONN KESSLER, Judge.