SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| PEOPLE'S CHOICE TV CORPORATION, INC., a Delaware corporation, | ) ) ) | Arizona Supreme Court No. CV-01-0156-PR |
| Plaintiff/Appellee, | ) ) ) | Court of Appeals Division One No. 1 CA-TX 00-0010 |
| v. | ) ) | |
| CITY OF TUCSON, a municipal corporation, an agency of the State of Arizona, | ) ) ) | Arizona Tax Court No. TX 97-00391 |
| Defendant/Appellant. | ) ) | |
| | ) | **O P I N I O N** |

Appeal from the Arizona Tax Court
The Honorable Jeffrey S. Cates, Judge
AFFIRMED

Opinion of the Court of Appeals, Division One
199 Ariz. 570, 20 P.3d 1151 (2001)
VACATED

Snell & Wilmer, L.L.P.                                               Phoenix
        By:    Barbara J. Dawson
               Martha E. Gibbs
               Charles A. Pulaski, Jr.
Attorneys for People's Choice TV Corporation, Inc.

Tucson City Attorney's Office, Civil Division                       Tucson
        By:    Michael D. House
               David L. Deibel
Attorneys for City of Tucson

Andrew Kreig                                               Washington, D.C.
Attorney for Amicus Curiae Wireless Communications
 Association International

League of Arizona Cities and Towns                                    Tempe
        By:     David R. Merkel
        - and -
Martinez & Curtis, P.C.                                               Phoenix
        By:     Anja K. Wendel
        - and -
City of Phoenix                                                       Phoenix
        By:     Sandra K. McGee
        - and -
Ryan, Woodrow & Rapp, P.L.C.                                          Phoenix
        By:     Francis Migray
        - and -
Mesa City Attorney                                                    Mesa
        By:     Alfred J. Smith
        - and -
Margrave Celmins, P.C.                                                Scottsdale
        By:     Lat J. Celmins
Attorneys for Amicus Curiae League of Arizona Cities
  and Towns (City of Yuma, City of Gilbert, City of
  Mesa, City of Phoenix, and City of Williams)

DRUKE, Judge

¶1        This appeal by People's Choice TV Corporation, Inc. (PCTV), challenges the imposition of a transaction privilege tax on its telecommunications services by the City of Tucson. PCTV asserts that, properly interpreted, Arizona Revised Statutes (A.R.S.) § 42-6004 prohibits the City's imposition of the tax.[1] The tax court agreed with PCTV, but the court of appeals reversed after reaching a contrary interpretation of the statute. *People's Choice TV Corp. v. City of Tucson*, 199 Ariz. 570, 20 P.3d 1151 (App. 2001). Disagreeing with that interpretation, we accepted review.

¶2        The facts giving rise to this appeal are undisputed. From 1992 to 1996, PCTV provided microwave television services to its customers in Tucson and the surrounding area. To do so, PCTV

---

[1]A.R.S. § 42-6004 was previously numbered A.R.S. § 42-1453. *See* 1997 Ariz. Sess. Laws, ch. 150, § 140. This opinion refers to the statute's current number.

received both local and out-of-state programs at its facility outside Tucson and then transmitted the programs to its customers using microwave frequencies. The customers, in turn, received these transmissions through microwave antennae provided and installed by PCTV for a fee. PCTV offered its customers various programming packages at different monthly fees, and all packages contained both local and out-of-state programs. PCTV also charged an additional fee for each pay-per-view program its customers ordered.

¶3 In 1997, the City conducted a tax audit of PCTV's income from 1992 to 1996 and, based on Tucson City Code (Code) § 19-470, assessed a transaction privilege tax and interest totaling $220,178.60. PCTV protested the assessment and, after exhausting its administrative remedies, filed an action in the tax court pursuant to A.R.S. § 12-163. Both parties moved for summary judgment, and the tax court granted judgment in favor of PCTV, finding that § 42-6004 precluded the City's imposition of "transaction privilege taxes on any category of income of interstate telecommunications services." The City appealed to the court of appeals pursuant to A.R.S. § 12-170.

¶4 As it did in the tax court, the City argued that § 42-6004 did not prohibit the City's taxation of PCTV's revenue from its telecommunications services. The City contended it had imposed the tax pursuant to Code § 19-470(a)(2)(a) and (c), which authorize a two percent tax on the gross income from "[a]ll fees for connection to a telecommunication system" and "[f]ees charged for access to or subscription to or membership in a telecommunication system or network." Relying primarily on *Sonitrol of Maricopa County v. City of Phoenix*, 181 Ariz. 413, 891 P.2d 880 (App. 1994), the City asserted that it had not imposed "a tax on the actual transmissions [by PCTV] but only on the fees charged for subscription, access, or connection to [its] telecommunication service."

3

**¶5**         PCTV responded by first pointing out that it provided mainly interstate telecommunications services and, thus, fell within the provisions of § 42-6004(A)(2). The statute provides that "[a] city, town or special taxing district shall not levy a transaction privilege, sales, use or other similar tax on . . . [i]nterstate telecommunications services." PCTV also claimed its customers did "not subscribe, gain access to, or become members in a telecommunications system" but, rather, they ordered and paid for certain "programming" from PCTV. "In other words," argued PCTV, its "customers pa[id] for transmissions and they only receive[d] those transmissions (that programming), which they ha[d] contracted to receive."

**¶6**         But the court of appeals agreed with the City's position, holding that § 42-6004(A)(2) "did not preclude imposition of the telecommunications services tax pursuant to Code section 19-470(a)(2)(c)." *People's Choice,* 199 Ariz. 570, ¶26, 20 P.3d 1151, ¶ 26. In so holding, the court noted that § 42-6004(A)(2) did not define "interstate telecommunications services" and, thus, the court applied the definition for "intrastate telecommunications services" found in a related statute, A.R.S. § 42-5064(C)(3). That statute defines "intrastate telecommunications services" as "transmitting signs, signals, writings, images, sounds, messages, data or other information of any nature by wire, radio waves, light waves or other electromagnetic means if the information transmitted originates and terminates in this state." Based on this definition, the court interpreted § 42-6004(A)(2) as prohibiting only the taxation of interstate "'transmissions'" of information, not the taxation of the "services ancillary to the interstate transmission of signals." *People's Choice*, 199 Ariz. 570, ¶19, 20 P.3d 1151, ¶19. And, relying on *Sonitrol*, the court determined that the City's taxation of system access, subscription, or membership under Code § 19-470(a)(2)(c) "does not tax 'transmissions' at all; it taxes the provision of services that use telecommunication. Accordingly, [that code provision] does not impose a prohibited tax on

4

'interstate telecommunications services' within the meaning of [§ 42-6004(A)(2)]." *People's Choice*, 199 Ariz. 570, ¶23, 20 P.3d 1151, ¶23. We believe the phrase "interstate telecommunications services" requires a more expansive meaning than the court of appeals gave it when interpreting § 42-6004(A)(2).

**¶7** We review de novo the interpretation of a statute. *Arizona Dep't of Revenue v. Dougherty*, 200 Ariz. 515, ¶7, 29 P.3d 862, ¶7 (2001). Our primary goal when interpreting a statute is to discern and give effect to legislative intent. *Mail Boxes, Etc., U.S.A. v. Industrial Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). To that end, "[w]e construe the statute as a whole, and consider its context, language, subject matter, historical background, effects and consequences, and its spirit and purpose." *State ex rel. Arizona Dep't of Revenue v. Phoenix Lodge No. 708, Loyal Order of Moose, Inc.*, 187 Ariz. 242, 247, 928 P.2d 666, 671 (App. 1996). And, when interpreting tax statutes, we resolve ambiguities in favor of the taxpayer. *Wilderness World, Inc. v. Arizona Dep't of Revenue,* 182 Ariz. 196, 199, 895 P.2d 108, 111 (1995); *Cable Plus Co. v. Arizona Dep't of Revenue*, 197 Ariz. 507, ¶10, 4 P.3d 1050, ¶10 (App. 2000).

**¶8** Here, the language of § 42-6004(A)(2) makes clear that the legislature intended to prohibit cities, towns, and special taxing districts from taxing interstate telecommunications services. Less clear, however, is the breadth of that intended prohibition because the statute does not define "interstate telecommunications services." Consequently, we "look to statutes on the same subject matter to determine legislative intent and to maintain statutory harmony." *In re Robert A.*, 199 Ariz. 485, ¶8, 19 P.3d 626, ¶8 (App. 2001); *see also State ex rel. Larson v. Farley*, 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970). In this case, as did the court of appeals, we look to § 42-5064, which establishes the telecommunications classification for imposing a transaction privilege tax on intrastate telecommunications services and provides a definition on a similar subject. Because § 42-5064(C) defines "intrastate telecommunications

5

services" as the "transmitting" of information by electromagnetic means, § 42-5064 appears to impose the tax only on the transmission of information, not on related services. But this impression is dispelled by the provisions of § 42-5064(B). It generally provides that "[t]he tax base for the telecommunications classification is the gross proceeds of sales or gross income derived from the business, including the gross income derived from tolls, subscriptions and services on behalf of subscribers." Thus, when construed as a whole, § 42-5064 permits the imposition of a transaction privilege tax on the gross income received by businesses engaged in electromagnetically transmitting intrastate information, and that includes income from sales, tolls, subscriptions, and subscriber services. Adopting this construction for interpreting § 42-6004(A)(2), we conclude that it conversely prohibits cites, towns, and special taxing districts from imposing transaction privilege taxes on the gross income that such interstate businesses receive from sales, tolls, subscriptions, and subscriber services.

¶9          This prohibition against taxing interstate telecommunications services likely finds its genesis in the Communications Act of 1934, ch. 652, 48 Stat. 1064 (codified as amended at 47 U.S.C. §§ 151 through 615(b)).[2] The Act establishes a dual federal and state system of regulating interstate and intrastate telecommunications services by specifically granting the Federal Communications Commission jurisdiction over "all interstate and foreign" telecommunications services, but expressly exempting from its authority "intrastate communication service." 47 U.S.C. § 152(a) and (b). *See Louisiana Public Serv. Comm'n v. FCC*, 476 U.S. 355, 360, 106 S. Ct. 1890, 1894, 90 L. Ed. 2d 369,

---

[2]Although the Act initially applied only to telephone and telegraph services, it has since been amended to cover telecommunications services generally. *See* 47 U.S.C. § 153(46) (defining "telecommunications service" as "the offering of telecommunications for a fee directly to the public, . . . regardless of the facilities used").

376 (1986) (recognizing both a dual regulatory system over telecommunications services and the Commission's plenary and preemptive power over such interstate services).

¶10        We believe the statutes at issue here reflect this duality. Section 42-5064 generally allows the imposition of a transaction privilege tax on businesses "providing intrastate telecommunications services." The statute's express language thus limits its application to intrastate telecommunications services and, by implication, prohibits the taxation of interstate telecommunications services. *See Cable Plus Co.*, 197 Ariz. 507, ¶17, 4 P.3d 1050, ¶17 (finding § 42-5064 implicitly precludes taxation of interstate telecommunications services). In accordance with that prohibition, § 42-5064(A) specifically exempts cable and microwave television systems from intrastate taxation because such systems, like PCTV, primarily provide interstate programming. *See United States v. Southwestern Cable Co.*, 392 U.S. 157, 168-69, 88 S. Ct. 1994, 2000-01, 20 L. Ed. 2d 1001, 1010-11 (1968) (observing that cable systems generally engage in interstate communication); *TV Pix, Inc., v. Taylor*, 304 F. Supp. 459, 463 (D. Nev. 1968), *aff'd without opinion*, 396 U. S. 556, 90 S. Ct. 749, 24 L. Ed. 2d 746 (1970) (community antenna system constitutes "one continuous interstate transmission to the viewer's television set"). And, consistent with the Act's dual regulatory scheme, § 42-6004(A)(2) categorically prohibits cities, towns, and special taxing districts from levying a transaction privilege tax on interstate telecommunications services. As to those governmental entities, § 42-6004(A)(2) makes explicit what § 42-5064 merely implies.[3]

---

[3]We note that, absent this statutory prohibition, federal law would not necessarily preclude the taxation of interstate telecommunications services. *See Goldberg v. Sweet*, 488 U.S. 252, 260-68, 109 S. Ct. 582, 588-92, 102 L. Ed. 2d 607, 616-21 (1989) (holding that Commerce Clause does not prohibit state taxation of interstate telecommunications provided state has substantial nexus with telecommunications reached by tax, and tax is fairly apportioned, does not discriminate against interstate commerce, and relates to services that state provides to taxpayer).

¶11　　　　Accordingly, we conclude that § 42-6004(A)(2) prohibits the City from imposing a transaction privilege tax on PCTV's gross income from connection, access, subscription, or membership fees. And, although relied on by the court of appeals, *Sonitrol* does not alter our conclusion. That case involved a city's taxation of intrastate telecommunications services and, thus, did not concern, as here, the prohibition in § 42-6004(A)(2) against taxing interstate telecommunications services.

¶12　　　　We therefore vacate the decision of the court of appeals and affirm the decision of the tax court. In our discretion, we deny PCTV's request for attorney's fees on appeal made pursuant to A.R.S. § 12-348(B).

_____
WILLIAM E. DRUKE, Judge*


CONCURRING:


_____
CHARLES E. JONES, Chief Justice


_____
RUTH V. McGREGOR, Vice Chief Justice


_____
STANLEY G. FELDMAN, Justice


_____
THOMAS A. ZLAKET, Justice (retired)


*Due to a vacancy on the court, and pursuant to article VI, § 3, of the Arizona Constitution, the Honorable William E. Druke, Judge of the Court of Appeals, Division Two, was designated to sit on this case.