209 P.3d 1052

**EXCELL AGENT SERVICES, L.L.C.;
Voltdelta Resources, Inc.; Comdisco,
Inc.; Golden Enterprises, Inc., Plaintiffs–Appellants,**

v.

**ARIZONA DEPARTMENT OF
REVENUE, Defendant–
Appellee.**

No. 1 CA–TX 07–0003.

Court of Appeals of Arizona,
Division 1, Department T.

Sept. 4, 2008.

Bancroft Susa & Galloway, P.C. By Michael G. Galloway, Douglas S. John, Paul D. Bancroft, Phoenix, Attorneys for Plaintiffs–Appellants.

Terry Goddard, Attorney General By Christine Cassetta, Assistant Attorney General, Michael F. Kempner, Assistant Attorney General, Denise Ann Faulk, Assistant Attorney General, Phoenix, Attorney for Defendant–Appellee.

## OPINION

HALL, Judge.

¶ 1 Plaintiffs appeal the tax court's judgment that the sale of equipment to Excell Agent Services, L.L.C. by Voltdelta Resources, L.L.C., Comdisco, Inc., and Golden Enterprises, Inc. was not exempt from the Arizona transaction privilege tax under Arizona Revised Statutes (A.R.S.) section 42–5061(B)(3) (Supp.2007) and that Excell's purchase of that equipment was not exempt from the Arizona use tax under A.R.S. § 42–5159(B)(3) (Supp.2007). For reasons that follow, we affirm the tax court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Excell, an Arizona-based business, furnishes outsourced directory assistance to telecommunications companies such as AT & T and Bell Canada. Using its nationwide database of telephone numbers, Excell provides telephone customers with the phone numbers for requested listings and, for an additional fee, transfers the customer to the requested listing approximately fourteen percent of the time.

¶ 3 During the 1990s, Excell purchased equipment from different sources, including its co-plaintiffs VoltDelta, Comdisco, and Golden. Excell paid the use tax on its purchases from the vendors, and they in turn became liable for transaction privilege taxes on their sales to Excell.

¶ 4 In accordance with A.R.S. § 42–1118(E) (Supp.2007), Plaintiffs subsequently filed refund claims for the transaction privilege and use taxes with the Arizona Department of Revenue (DOR).

¶ 5 DOR denied Plaintiffs' claims, and they appealed. The administrative law judge (ALJ) agreed with Plaintiffs that they did not owe the taxes but denied the bulk of the refunds requested on the ground that Plaintiffs failed to submit sufficient documentation that they had paid the taxes.

¶ 6 DOR and Plaintiffs both appealed that decision to the director of DOR. The director determined that Plaintiffs were subject to the taxes and entitled to no refunds. Plaintiffs then appealed to the State Board of Tax Appeals, which affirmed DOR's order. Plaintiffs next appealed to the Arizona Tax Court pursuant to A.R.S. § 42–1254(A) (2006). The parties filed cross-motions for summary judgment on whether the equipment was exempt from the transaction privilege and use taxes. Following oral argument, the tax court entered judgment in favor of DOR.

¶ 7 Plaintiffs then appealed to this court, and we have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶ 8 This court reviews a grant of summary judgment de novo. *Wilderness World, Inc. v. Dep't of Revenue,* 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995). When the material facts are undisputed, our task is to decide whether the tax court correctly applied the substantive law to those facts. *Brink Elec. Const. Co. v. Ariz. Dep't of Revenue,* 184 Ariz. 354, 358, 909 P.2d 421, 425 (App.1995). Our review of statutory construction issues is also de novo. *Ariz. Dep't of Revenue v. Blue Line Distrib., Inc.,* 202 Ariz. 266, 266, ¶ 4, 43 P.3d 214, 214 (App.2002).

¶ 9 We seek to interpret statutes in the way intended by the legislature and "look first to the language" of statutes as "the most reliable indicator" of that intent. *Obregon v. Indus. Comm'n of Ariz.,* 217 Ariz. 612, 614, ¶ 11, 177 P.3d 873, 875 (App.2008). When the statutory language "is clear and unambiguous, we apply its plain meaning." *Gravel Res. of Ariz. v. Hills,* 217 Ariz. 33, 37, ¶ 10, 170 P.3d 282, 286 (App.2007). We also "strive to construe a statute and its subsections as a consistent and harmonious whole." *State v. Wagstaff,* 164 Ariz. 485, 491, 794 P.2d 118, 124 (1990). Further, although statutes imposing taxes are liberally construed in favor of taxpayers and against the government, statutes granting tax exemptions are strictly construed "because they violate the policy that all taxpayers should share the common burden of taxation." *State ex. rel Ariz. Dep't of Revenue v. Capitol Castings, Inc.,* 207 Ariz. 445, 447, ¶ 10, 88 P.3d 159, 161 (2004).

¶ 10 Under A.R.S. § 42–5061(B)(3), income is exempt from the transaction privilege tax when derived from

> [t]angible personal property sold to persons engaged in business classified under the telecommunications classification and consisting of central office switching equipment, switchboards, private branch exchange equipment, microwave radio equipment and carrier equipment including optical fiber, coaxial cable and other transmission media which are components of carrier systems.

There is a corresponding exemption from the Arizona use tax under A.R.S. § 42–5159(B)(3).

¶ 11 Accordingly, Plaintiffs are exempt from the taxes if the equipment at issue: (1) is tangible personal property, (2) was sold to a business classified under the telecommunications classification, and (3) is among the enumerated types of equipment. The parties agree that the equipment is tangible personal property, which is "personal property which may be seen, weighed, measured, felt or touched or is in any other manner perceptible to the senses." A.R.S. § 42–5001(16) (Supp.2007). They dispute whether the other two requirements are satisfied.

¶ 12 According to A.R.S. § 42–5064(A) (2006), the telecommunications classification "is comprised of the business of providing intrastate telecommunications services." The statute defines "intrastate telecommunications services" as "transmitting signs, signals, writings, images, sounds, messages, data or other information of any nature by wire, radio waves, light waves or other electromagnetic means if the information transmitted originates and terminates in this state." A.R.S. § 42–5064(E)(4). Excell provides information that is transmitted, but it does not actually transmit the information. AT & T and Sprint own the phone lines over which Excell provides directory assistance; it is, therefore, AT & T and Sprint that transmit the information provided by Excell, and it is these companies that are engaged in the telecommunications business rather than Excell.

¶ 13 This interpretation accords with A.R.S. § 42–14401 (2006), which defines a "telecommunications company" for property tax purposes as an entity "that owns communications transmission facilities and that provides public telephone or telecommunications exchange or interexchange access for compensation to effect two-way communication to, from, through or within this state." Excell does not own transmission facilities and is not involved in providing exchange or interexchange access. A similar definition is also provided in A.R.S. § 9–581(4) (2008) regarding public utilities, which defines "telecommunications" as "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." Excell does not transmit information callers already possess; instead Excell provides information to the callers.

¶ 14 Plaintiffs contend that Excell *does* transmit information, but their implicit definition of "transmit" is simply not in accordance with the term's usage in A.R.S. § 42–5064(E)(4). The way Plaintiffs use the term, when a person calls her mother to obtain her cousin's phone number, for instance, her mother would be "transmitting" that information. This is obviously not the relevant sense of "transmit." The phone company is transmitting the information in the relevant sense-not the person speaking on the telephone. Similarly when one looks up an airfare online, the airline is, in the sense employed by Excell, "transmitting" information about its fares, but this again is not the appropriate sense of "transmit." It would be the internet service provider that was doing the transmitting in the sense in which the word is used in § 42–5064(E)(4)–not the airline.

¶ 15 Plaintiffs suggest that the airline would not be considered a telecommunications company because its dominant purpose is to furnish air travel rather than to transmit information. This misses the point. The point is not that the airline both provides telecommunications services and air travel but focuses on the latter. Rather, the point is that the airline provides no telecommunications services whatsoever because it does not transmit information in the relevant sense of "transmit." The same is true of Excell. Excell provides a phone number-just as a mother might provide a cousin's phone number-but it does not transmit the phone number in the sense required by § 42–5064(E)(4). Excell's operators make the sounds that are transmitted to the customers' ears, but Sprint and AT & T actually transmit these sounds.

¶ 16 Excell cites *Paging Network of Arizona, Inc. v. Arizona Department of Revenue,* 193 Ariz. 96, 970 P.2d 450 (App.1998), as supportive of its position that it is in the

telecommunications business. We do not find this case to support its position, however. In *Paging Network*, the court found that "[t]he taxpayer's equipment ... broadcasts a radio signal to the paging customer." *Id.* at 96, ¶ 3, 970 P.2d at 450. In other words, in that case, the taxpayer's own equipment transmitted the signal. In this case, it is AT & T and Sprint that transmit the information-not Excell.

¶ 17 Plaintiffs also rely on *People's Choice TV Corp. v. City of Tucson*, 202 Ariz. 401, 46 P.3d 412 (2002). *People's Choice* vacated a decision of this court that held that Tucson could tax subscriptions to a pay TV service despite A.R.S. § 42–6004(A)(2) (Supp.2007), which forbids cities from taxing "interstate telecommunications services." *See People's Choice TV Corp. v. City of Tucson*, 199 Ariz. 570, 20 P.3d 1151 (App.2001). Relying on the definition of "telecommunications services" found in what is now A.R.S. § 42–5064(E)(4), this court found that the monthly fees paid by subscribers were not payments for transmissions, and thus not for telecommunications services, because subscribers were liable for them regardless of whether they ever tuned in and received any transmissions at all. *Id.* at 575–76, ¶¶ 18, 24, 20 P.3d at 1156–57.

¶ 18 In rejecting that analysis, our supreme court found that A.R.S. § 42–5064(B), which defines the tax base of telecommunications companies, requires a more expansive definition of what constitutes "telecommunications services." *People's Choice*, 202 Ariz. at 403–04, ¶¶ 6, 8, 46 P.3d at 414–15. Because the tax base includes "gross income derived from tolls, subscriptions and services on behalf of subscribers," the supreme court concluded that such subscriptions and services were telecommunications services, which A.R.S. § 42–6004(A)(2) precludes cities from taxing if they are interstate. *Id.* at 404, ¶ 8, 46 P.3d at 415. Because it was not relevant to that case, the supreme court did not cite the remainder of § 42–5064(B), which also includes income from "the publication of a directory of the names of subscribers" as part of the tax base of a telecommunications company.

¶ 19 Nonetheless, we do not find the supreme court's decision in *People's Choice* supportive of Plaintiffs' position here. *People's Choice* did not hold that a company could be deemed a "business classified under the telecommunications classification," as required by the tax exemptions sought here, even if it did not provide telecommunications services as defined in A.R.S. § 42–5064(E)(4). It was undisputed in that case that People's Choice TV Corporation actually transmitted signals using microwave frequencies, *id.* at 402, ¶ 2, 46 P.3d at 413, and would therefore be a business in the "telecommunications classification" under A.R.S. § 42–5064(A) and (E)(4) were it an intrastate operation. Rather, *People's Choice* held that if a business does provide telecommunications services as defined in § 42–5064(E)(4), a guide to which types of payments to that business should be regarded as payments for such services is provided by § 42–5064(B). *Id.* at 404, ¶ 8, 46 P.3d at 415 ("[W]hen construed as a whole, § 42–5064 permits the imposition of a transaction privilege tax on the gross income received *by businesses engaged in electromagnetically transmitting intrastate information,* and that includes income from sales, tolls, subscriptions, and subscriber services." (Emphasis added.) ). Because Excell does not electromagnetically transmit information and, therefore, does not provide telecommunications services as defined in § 42–5064(E)(4), it is not in the "telecommunications classification" pursuant to § 42–5064(A). And because it is not in the telecommunications classification pursuant to § 42–5064(A), Plaintiffs are not entitled to tax exemptions under either § 42–5061(B)(3) or § 42–5159(B)(3).

¶ 20 We, therefore, conclude that Excell is not engaged in the telecommunications business and need not address whether the equipment at issue here could be considered any of the types of equipment that are exempt under A.R.S. §§ 42–5061(B)(3) and – 5159(B)(3).

## CONCLUSION

¶ 21 For the foregoing reasons, we affirm the tax court's judgment.

CONCURRING: DONN KESSLER, Presiding Judge, and DANIEL A. BARKER, Judge.