261 P.3d 473

**CITY OF PEORIA, a municipal corporation; and City of Phoenix, a municipal corporation, Plaintiffs/Defendants/Appellees,**

v.

**BRINK'S HOME SECURITY, INC., a Delaware corporation, Defendant/Plaintiff/Appellant.**

**No. 1 CA–TX 09–0001.**

Court of Appeals of Arizona, Division 1, Department T.

Aug. 9, 2011.

Stephen M. Kemp, City Attorney, Peoria City Attorney's Office By Cynthia Odom, Assistant City Attorney, Peoria, Attorneys, for Plaintiff/Defendant/Appellee Peoria.

Gary Verburg, City Attorney, Phoenix City Attorney's Office By James H. Hays, Assistant City Attorney, Phoenix, Attorneys for Plaintiff/Defendant/Appellee.

Snell & Wilmer LLP By Barbara J. Dawson, Martha E. Gibbs, Melissa M. Krueger, Robert I. Schwimmer, Phoenix, Attorneys for Defendant/Plaintiff/Appellant.

## OPINION

JOHNSEN, Judge.

¶ 1 Phoenix and Peoria assessed Brink's Home Security, Inc. under a provision of the Model City Tax Code that taxes security-system "monitoring services" as "telecommunication services." In an earlier decision, we held the cities' assessments did not violate a state statute prohibiting municipal taxation of interstate telecommunications services. *City of Peoria v. Brink's Home Sec., Inc.,* 224 Ariz. 278, 229 P.3d 1020 (App.2010); *see* Arizona Revised Statutes ("A.R.S.") section 42–6004(A)(2) (Supp. 2010). The supreme court vacated our decision, concluding that the transmissions by which Brink's conducts its monitoring services are not intrastate telecommunications. *City of Peoria v. Brink's Home Sec., Inc.,* 226 Ariz. 332, 334, ¶ 12, 247 P.3d 1002, 1004 (2011). The court remanded to us to consider the cities' argument that the taxes do not breach the ban on municipal taxation of interstate telecommunications because Brink's is not engaged in the business of providing "telecommunications services" pursuant to state law. We reject the cities' argument and conclude the taxes are impermissible assessments on interstate "telecommunications services."

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Brink's sells home alarm systems and related monitoring services. It installs home sensors and control panels, then contracts with homeowners to provide alarm monitoring services. When a sensor detects a disturbance in a home, information is transmitted through a telephone line to the Brink's central monitoring station in Texas. There, a Brink's employee telephones the homeowner to alert him or her to the alarm. When appropriate, the monitoring employee then telephones to summon first responders to the home.

¶ 3 After an account review, Phoenix and Peoria assessed transaction privilege taxes on Brink's pursuant to Phoenix City Code § 14–470(a)(2)(D) and Peoria City Code § 12–470(a)(2)(D), respectively. Phoenix assessed $169,912.33 for the December 1998 to October 2004 audit period; Peoria assessed taxes of $5,968.29 for the January 1999 to December 2003 audit period. After Brink's challenged the taxes, the tax court entered summary judgment in favor of the cities.[1]

## DISCUSSION

¶ 4 No Arizona city may levy a transaction privilege tax on "[i]nterstate telecommunications services." A.R.S. § 42–6004(A)(2). Phoenix and Peoria assessed Brink's under a Model City Tax Code provision that taxes gross income from "the business activity of providing telecommunication services," which the Phoenix and Peoria tax codes state "shall include ... [c]harges for monitoring services relating to a security or burglar alarm system located within the City where such system transmits or receives signals or data over a communications channel." Model Code § 470(a)(2)(D); *see* Phoenix City Code § 14–470(a)(2)(D); Peoria City Code § 12–470(a)(2)(D).

¶ 5 While the cities acknowledge that their own tax codes characterize home-security monitoring companies as being in the business of providing "telecommunication ser-

---

1. We have jurisdiction of the appeal by Brink's under A.R.S. § 12–2101(B) (2003). Because we have determined that it would not assist us in determining the issue presented on remand, we deny the parties' requests for oral argument.

vices," they argue that phrase means something different for purposes of the state-law prohibition. That is, they contend the law allows them to tax Brink's because even though the company "provid[es] telecommunication services" for purposes of the Model City Tax Code, it is not engaged in "telecommunications services" pursuant to A.R.S. § 42–6004(A)(2).

¶ 6 The cities' argument is based on their codes' broad definition of "telecommunication service" as "any service or activity connected with the transmission or relay of sound, visual image, data, information, images, or material over a communications channel or any combination of communication channels." Phoenix City Code § 14–100; Peoria City Code § 12–100. Under that definition, the cities argue the monitoring services Brink's performs are taxable under their codes merely because they are "connected with" the transmission of data over a communications channel.

¶ 7 State law does not define the "[i]nterstate telecommunications services" that A.R.S. § 42–6004(A)(2) exempts from municipal taxes. "Intrastate telecommunications services," however, is defined to mean "transmitting signs, signals, writings, images, sounds, messages, data or other information of any nature by wire, radio waves, light waves or other electromagnetic means if the information transmitted originates and terminates in this state." A.R.S. § 42–5064(E)(4) (Supp.2010).

¶ 8 From the language of § 42–5064(E)(4), the cities argue the exemption granted by § 42–6004(A)(2) applies only to the *transmission* of "signs, signals, writings, images, sounds, messages, data or other information of any nature by wire, radio waves, light waves or other electromagnetic means." Thus, the cities contend that by prohibiting municipal taxation only of "interstate telecommunications services," rather than services "connected with" interstate telecommunications, the legislature intended to permit cities to tax services that merely are "connected with" interstate telecommunications services.

¶ 9 Guided by *People's Choice TV Corp. v. City of Tucson*, 202 Ariz. 401, 46 P.3d 412

(2002), we disagree. At issue in that case was a city tax on revenues generated by a company that provided customers with "microwave television services." *Id.* at 402, ¶ 2, 46 P.3d at 413. The company "received both local and out-of-state programs at its facility outside Tucson and then transmitted the programs to its customers using microwave frequencies." *Id.* The city argued that A.R.S. § 42–6004(A)(2) did not prohibit the tax because the assessment was not imposed on the company's transmissions of information, but only on subscription fees and access fees the company charged its customers for connecting to the telecommunications service. *Id.* at 403–04, ¶ 8, 46 P.3d at 414–15. In holding that § 42–6004(A)(2) barred the tax, the supreme court rejected the proposition that the statute allows cities to tax "services ancillary to the interstate transmission of signals." *Id.* at 403, 404, ¶¶ 6, 8, 46 P.3d at 414, 415 (citing A.R.S. § 42–5064(B), which provides that "[t]he tax base for the telecommunications classification is the gross proceeds of sales or gross income derived from the business, *including the gross income from tolls*, subscriptions and services on behalf of subscribers.") (emphasis added). The court likewise rejected the notion that the city's assessment could survive A.R.S. § 42–6004(A)(2) because it did not tax "transmissions" but rather taxed "the provision of services that use telecommunication." *Id.* at 403, ¶ 6, 46 P.3d at 414.

¶ 10 *People's Choice* teaches that the exemption granted by § 42–6004(A)(2) extends not only to income from the transmitting of interstate signals, but also to income from "services ancillary" to such transmissions and "services that use telecommunication." 202 Ariz. at 403, ¶ 6, 46 P.3d at 414. Although the monitoring services that Brink's provides require the use of sensory devices installed in customers' homes and likely are enhanced by the exterior signs Brink's furnishes to warn off would-be intruders, the monitoring that Brink's conducts by way of interstate telecommunications is at the center of its business. Under *People's Choice*, the income Brink's receives for providing monitoring

**592**

services therefore is exempt from municipal taxes pursuant to A.R.S. § 42–6004(A)(2).

¶ 11 Although the cities argue that Brink's is engaged in the home-security business, not the telecommunications business, the record does not disclose that the cities have assessed the revenues Brink's receives from its sales or installation of sensors and communication devices in customers' homes. Instead, the cities have assessed the monthly revenues Brink's receives for monitoring those devices and from engaging in the telecommunications described above. Brink's customers pay for security services provided by telecommunications that are sent over state lines, just as the *People's Choice* customers paid for entertainment in the form of interstate television programs.

¶ 12 The cities also argue that a customer may purchase a home-security service simply for deterrence purposes (they posit that a homeowner may subscribe simply to obtain a Brink's sign for the effect it will have on potential burglars) and that therefore Brink's does not actually sell telecommunications services. But an individual customer's motivation for purchasing home-security monitoring services does not alter the nature of the service Brink's is selling. Analogizing to the situation presented in *People's Choice,* a customer may purchase a television subscription to entertain friends who may come to visit. If her friends do not show up, the television may sit idle, but that would not alter the taxable nature of her subscription.

■ ¶ 13 Nor do we accept the cities' contention that Brink's does not provide "telecommunications services" under state law because federal law does not include "monitoring services" in the definition of "telecommunications services." *See* 47 U.S.C. § 153(24) (defining "information services"); *U.S. West Commc'ns, Inc. v. Hix,* 183 F.Supp.2d 1249, 1252–53 (D.Colo.2000). In its decision remanding this case to us, our supreme court held that § 42–6004(A)(2)'s

definition of telecommunications is not limited by the federal definition. *Brink's,* 226 Ariz. at 334–35, ¶¶ 14–15, 247 P.3d at 1004–05. Section 42–6004(A)(2) was amended in 1991 to prohibit taxes on "[i]nterstate telecommunications services, *which include* that portion of telecommunications services, such as subscriber line service, allocable by federal law to interstate telecommunications service." 1991 Ariz. Sess. Laws, ch. 28, § 1 (emphasis added). As our supreme court stated, "the insertion of the comma that precedes 'which include' makes the clause nonrestrictive." *Brink's,* 226 Ariz. at 335, ¶ 15, 247 P.3d at 1005. The bar on cities' taxation of "telecommunications services" in § 42–6004(A)(2) therefore does not apply only to "telecommunications services" as defined by federal law.

## CONCLUSION

¶ 14 For the reasons stated, we conclude Brink's is engaged in the business of providing telecommunications services within the meaning of A.R.S. § 42–6004(A)(2). That statute precludes municipal taxation of interstate telecommunications services. The corollary to our supreme court's conclusion that the Brink's telecommunications are *not* intrastate transmissions is that they *are* interstate transmissions. *See Brink's,* 226 Ariz. at 334, ¶ 8, 247 P.3d at 1004. Accordingly, A.R.S. § 42–6004(A)(2) prohibits the taxes Phoenix and Peoria seek to impose on Brink's. For this reason, we reverse the tax court judgment insofar as it upheld the cities' assessments.[2]

CONCURRING: DANIEL A. BARKER and MAURICE PORTLEY, Judges.

---

**2.** We do not upset the decision of the tax court denying the request by Brink's for attorney's fees pursuant to Peoria City Code § 12–578(a) and Phoenix City Code § 14–578(a), which allow an award of fees when a city's position is "not substantially justified." However, contingent on

compliance with ARCAP 21, we grant the request by Brink's for its costs and attorney's fees in this court and the supreme court pursuant to A.R.S. § 12–348(B)(1) (2003). *See Wilderness World, Inc. v. Dep't of Rev.,* 182 Ariz. 196, 202, 895 P.2d 108, 114 (1995).