IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SWIFT TRANSPORTATION CO. OF ARIZONA L.L.C.,
*Plaintiff/Appellant*,

v.

ARIZONA DEPARTMENT OF REVENUE,
*Defendant/Appellee*.

No. 1 CA-TX 19-0004
FILED 7-14-2020

Appeal from the Arizona Tax Court
No.  TX2018-001103
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

Ryan Rapp & Underwood & Pacheco, PLC, Phoenix
By Michael G. Galloway, Ian A. Macpherson
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Kimberly J. Cygan, Nancy K. Case
*Counsel for Defendant/Appellee*

The Cavanagh Law Firm, P.A., Phoenix
By James G. Busby, Jr., Karen Stafford
*Counsel for Amicus Curiae Waste Management of Arizona, Inc.*

_____

**OPINION**

_____

Presiding Judge David D. Weinzweig delivered the opinion of the Court, in which Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

_____

**W E I N Z W E I G**, Judge:

¶1   Arizona law imposes one of two distinct taxes on all diesel fuel sales—fuel tax (A.R.S. § 28-5606) or use tax (A.R.S. § 42-5155)—depending on how the diesel fuel is used. The law requires diesel fuel vendors to collect fuel taxes from consumers at purchase based on a legislative presumption that the fuel is acquired to propel motor vehicles on Arizona highways. But if the diesel fuel is ultimately used for a different purpose, the fuel taxes are refunded and the use tax is applied.

¶2   Swift Transportation Co. of Arizona, LLC ("Swift") sued the Arizona Department of Revenue ("ADOR") in tax court to obtain a refund of use taxes levied on its diesel fuel purchases, having already received a refund of fuel taxes on the same fuel. The tax court granted ADOR's motion to dismiss under Arizona Rule of Civil Procedure 12(b)(6). We affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶3   On appeal from a motion to dismiss, this court "assume[s] the truth of [all] well-pled factual allegations and indulge[s] all reasonable inferences therefrom." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008).

¶4   ADOR enforces state taxation laws, A.R.S. § 42-5003(A), while the Arizona Department of Transportation ("ADOT") enforces state transportation laws, A.R.S. § 28-5602. As the largest publicly traded common carrier in North America, Swift owns and operates an immense fleet of semi-trucks. Swift in turn must acquire and consume large amounts of diesel fuel to power those trucks.

*Fuel Tax and Use Tax*

¶5   Arizona law imposes fuel taxes or use taxes on diesel fuel sales depending on the fuel's ultimate use. A fuel tax is levied on diesel fuel acquired and used to propel "a use class motor vehicle" on Arizona highways, and is intended to "partially compensate" the State "for the use

of its highways." A.R.S. § 28-5606(B)(2). A use tax is also levied on diesel fuel as "tangible personal property" when stored, used or consumed in Arizona. A.R.S. § 42-5155(A). But consumers are exempt from paying use taxes under A.R.S. § 42-5159(A)(5) if their diesel fuel is "subject to" fuel taxes under A.R.S. § 28-5606(B).

*Three-Step Process*

¶6           Arizona law follows a three-step process to assure that diesel fuel is taxed based on its actual use. At purchase, A.R.S. § 28-5606(C) requires diesel fuel vendors to collect "advance payments" of fuel taxes from diesel fuel consumers. The vendor adds fuel taxes "to the price of motor vehicle fuel" and remits the taxes to ADOT "for the purpose of convenience and facility only." *Id.* This advance payment of fuel tax is imposed and collected under a statutory presumption that diesel fuel is "consumed in propelling [a] vehicle on the highways in this state," which ensures "the proper administration" of fuel taxes and "prevent[s] [tax] evasion." A.R.S. § 28-5615(A). And because the diesel fuel is "subject to" fuel taxes at point of sale, consumers are exempt from paying use taxes. A.R.S. § 28-5606(B).

¶7           Consumers may later rebut the presumption, recouping their advance payment of fuel taxes on diesel fuel by proving an actual use "other than to propel a motor vehicle on [Arizona] highway[s]." *See* A.R.S. § 28-5601(A)(36). Consumers submit their fuel tax refund applications to ADOT and ADOT "shall" refund the fuel taxes if its director is satisfied "the fuel was consumed" for another purpose. *Id.*, § 28-5612(A)(2)(a). ADOT adopts "rules and procedures" for taxpayers to prove actual use. A.R.S. § 28-5615(A).

¶8           And last, consumers who seek and obtain a fuel-tax refund must pay use taxes on the diesel fuel because the fuel is no longer "subject to" fuel taxes under A.R.S. § 28-5606(B) and thus no longer exempt from use taxes under A.R.S. § 42-5159(A)(5). Ariz. Admin. Code R15-5-2327(B) ("[A] purchase of use fuel is subject to use tax under A.R.S. § 42-5155 on the date the consumer is issued a refund because the use fuel is not subject to the use fuel tax under A.R.S. § 28-5606."). ADOT cannot even refund the fuel taxes of consumers "until [it] determines the difference between the amount of the refund and the amount of the use tax that is imposed under [the statute] on the fuel exempt from use fuel taxes if owed by the person." A.R.S. § 28-5612(F). If "the amount of the [fuel tax] refund is greater than the amount owed for the use tax," ADOT must subtract the "amount owed

for the use tax" and "refund the amount of the difference to the person."
*Id.*

*Swift Refund of Fuel Taxes*

**¶9**        Swift bought diesel fuel from vendors and tendered the advance payments of fuel taxes at purchase. Swift ultimately used part of the fuel for something other than to propel motor vehicles on Arizona highways. It thus applied to ADOT for a fuel-tax refund of $281,018.91, simultaneously reporting it would then owe $190,836.39 in use taxes, leaving a balance refund payment of $90,182.52. ADOT approved Swift's application in full.

**¶10**        A year later, Swift asked ADOR to refund its $190,836.39 offset payment of use taxes. Swift conceded that ADOT refunded its fuel taxes and acknowledged that it stored, used or consumed the diesel fuel as required to impose use taxes. But Swift argued it was still exempt from use taxes because the diesel fuel was "subject to" fuel taxes at purchase, which remained true notwithstanding the fuel-tax refund. A.R.S. § 42-5159(A)(5). ADOR denied the claim, ruling that Swift was no longer "subject to" fuel taxes after ADOT refunded those taxes and Swift then owed use taxes on the diesel fuel. Ariz. Admin. Code R15-5-2327(B).

**¶11**        Swift appealed to the tax court under A.R.S. § 42-1251(B)(2), bypassing administrative review. Swift alleged that "[p]urchases of motor vehicle fuel are subject [to] the Arizona use tax pursuant to A.R.S. § 42-5155," but simultaneously "exempt from the use tax pursuant to A.R.S. § 42-5159(A)(5) because they are subject to motor vehicle fuel tax pursuant to A.R.S. § 28-5606(A)."

**¶12**        The tax court granted ADOR's Rule 12(b)(6) motion to dismiss, stressing that A.R.S. § 28-5612(F) "adds additional steps, requiring [ADOR] to determine the amount of use tax to which the taxpayer would be subject if it were subject to use tax, and subtract that amount from the refund."[1] Swift timely appealed. We have jurisdiction under A.R.S. § 12-2101(B).

**DISCUSSION**

**¶13**        Swift raises two arguments on appeal: (1) the tax court erroneously dismissed its claim on a Rule 12(b) motion to dismiss, and (2)

---

[1]        ADOR and Swift do not contest the application of A.R.S. § 28-5612(F).

the court misinterpreted Arizona tax statutes.  We review both issues de novo.  *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529 (1994) (statutory interpretation); *Coleman v. City of Mesa*, 230 Ariz. 352, 355 ¶ 7 (2012) (motion to dismiss).

## I.      Propriety of Motion to Dismiss

**¶14**            Swift argues the tax court applied an incorrect standard to the motion to dismiss under Rule 12(b)(6).  A motion to dismiss should be granted "only if as a matter of law plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Conklin v. Medtronic, Inc.*, 245 Ariz. 501, 504, ¶ 7 (2018) (citations omitted).  Arizona courts assume the truth of all well-pled, material allegations in the complaint, but "do not accept as true allegations consisting of conclusions of law, inferences or deductions that are not necessarily implied by well-pleaded facts, unreasonable inferences or unsupported conclusions from such facts, or legal conclusions alleged as facts."  *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 389, ¶ 4 (App. 2005).

**¶15**            The tax court applied the proper standard.  Swift's claim presented a pure legal issue of statutory interpretation; ADOR's motion to dismiss tested the legal sufficiency of that claim.  *Blankenbaker v. Marks*, 231 Ariz. 575, 577, ¶ 6 (App. 2013) (statutory interpretation is a question of law). Swift acknowledges the point, framing the "substantive issue of this appeal" as one of "undisputed facts with only the question of a legal interpretation of the applicable use fuel and use tax provisions under A.R.S. Titles 28 and 42."

**¶16**            Even so, Swift emphasizes that "Arizona is a notice pleading state" and motions to dismiss are disfavored, which is true.  But motions to dismiss are disfavored because they test the legal sufficiency of the complaint without the benefit of a fully developed factual record.  *See Newman v. Maricopa Cty.*, 167 Ariz. 501, 504 (App. 1991).  Swift does not contend that discovery or external facts would have altered the scrutiny or fate of its purely legal claim, instead stressing "the facts are basic and undisputed."

## II.     Statutory Interpretation

**¶17**            Swift next contends the tax court incorrectly held that Swift must pay use taxes on its diesel fuel purchases after ADOT refunded its fuel taxes.  This argument requires us to interpret the use tax exemption under A.R.S. § 42-5159(A)(5).  When interpreting statutes, our goal is to determine

and effectuate the legislature's intent, *Rasor v. Nw. Hosp., LLC*, 243 Ariz. 160, 164, ¶ 20 (2017), and a statute's plain language is the most reliable indicator of legislative intent, *State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 9 (2004). A word's meaning is not read in "isolation," but should instead account for context and the whole statute. *Normandin v. Encanto Adventures, LLC*, 246 Ariz. 458, 460, ¶ 11 (2019). Arizona courts liberally construe tax statutes in favor of taxpayers and against the government, but "strictly construe tax exemptions because they violate the policy that all taxpayers should share the common burden of taxation." *Capitol Castings*, 207 Ariz. at 447, ¶ 10. Arizona tax statutes "shall not be construed to require or permit double taxation." A.R.S. § 42-11003.

¶18    Section 42-5159(A)(5) creates a use tax exemption for "the storage, use or consumption" of diesel fuel if the fuel is "subject to" fuel taxes under A.R.S. § 28-5606(B)(2). The tax court interpreted "subject to" as a synonym for "required to pay," meaning that Swift lost its use tax exemption when ADOT refunded its advance payments of fuel taxes.

¶19    Swift argues the court misinterpreted the relevant statutes and offers an alternative interpretation. Swift would define the adjective "subject to" as fixed in time at the point of sale. Thus, because Swift was "subject to" an "advance payment" of fuel taxes when purchasing diesel fuel, it forever remains "subject to" fuel taxes and exempt from use taxes—whether the fuel taxes are later refunded as envisioned and authorized under Arizona law based on actual use.

¶20    We are not persuaded. Swift's interpretation conflicts with the statutes' plain language and basic principles of statutory construction. The legislature crafted a versatile, multi-step process that attributes no permanent significance to the advance payment of fuel taxes at purchase but instead aims to ensure that diesel fuel is ultimately taxed on its actual use. Vendors must collect "advance payments" of fuel taxes from diesel fuel purchasers at point of sale based on a *presumed use*—the legislative presumption that consumers acquire diesel fuel to propel vehicles on state highways—which furthers "convenience and facility" and prevents tax evasion. A.R.S. §§ 28-5606(C), -5615(A). But the presumed use is not fixed in time. Consumers have an express path to later rebut the presumption based on *actual use* and recover their tentative fuel tax payments, A.R.S. §§ 28-5601(A)(36), -5612(A), -5615(A), leaving use taxes to fill the void, A.R.S. § 42-5155. We must "strive to construe a statute and its subsections as a consistent and harmonious whole." *Excell Agent Services, LLC v. Ariz. Dep't of Revenue*, 221 Ariz. 56, 57, ¶ 9 (App. 2008) (quoting *State v. Wagstaff*, 164 Ariz. 485, 491 (1990)).

¶21     That's what happened here. Swift's fuel was presumed "subject to" fuel taxes at purchase, but Swift later disproved the presumption and recouped its fuel-tax payments. *Cf. Airport Properties v. Maricopa Cty.*, 195 Ariz. 89, 99, ¶ 37 (App. 1999) (confirming "the idea that something is 'subject to' an influence or action does not communicate the idea that it is continuously and actively affected by that influence or action"). Whether the diesel fuel would be "subject to" fuel taxes was conclusively answered when ADOT granted Swift's fuel tax refund application.

¶22     Furthermore, A.R.S. § 42-5155 imposes use taxes on "the storage, use or consumption" of personal property in Arizona, including diesel fuel. But Swift's interpretation would enshrine a tax loophole on diesel fuel when the fuel is not used on Arizona highways. Swift offers no reason or rationale for this tax-free chasm and we "avoid a construction that leaves the statute meaningless or of no effect." *St. Joseph's Hosp. & Med. Ctr. v. Maricopa Cty.*, 130 Ariz. 239, 248 (App. 1981).

¶23     Our interpretation is confirmed by the legislative purpose of fuel taxes and use taxes. *Capitol Castings*, 207 Ariz. at 448, ¶ 13 ("Our interpretation of the statute therefore should further, not frustrate, the policy of encouraging investment and spurring economic development."). The legislature adopted *fuel taxes* "[t]o partially compensate this state for the use of its highways," A.R.S. § 28-5606(B)(2), helping defray the regular maintenance required to keep the highways operational. As a result, diesel fuel is not "subject to" fuel taxes unless used to traverse Arizona's highways. Meanwhile, *use taxes* exist to prevent state tax avoidance and erosion of the state's tax base. *Qwest Dex, Inc. v. Arizona Dep't of Revenue*, 210 Ariz. 223, 225-26, ¶ 12 (App. 2005) (explaining that the use tax prevents consumers from avoiding Arizona's transaction privilege tax by making their purchases in other states); *see also* A.R.S. § 42-5155(B) ("The [use] tax . . . applies to any purchaser that purchased tangible personal property for resale but subsequently uses or consumes the property."). Thus, as applied here, a taxpayer is required to pay use taxes on diesel fuel after its fuel tax payments are refunded. Our interpretation also accommodates the legislature's directive that tax statutes "shall not be construed to require or permit double taxation," shielding taxpayers from having to pay fuel taxes and use taxes on the same gallon of diesel fuel. *See* A.R.S. § 42-11003.

¶24     Swift misses the mark with its reliance on dictionary definitions, a 1984 Arizona Attorney General ("AG") opinion (I84-002), and this court's interpretation of a corporate tax reporting statute in *State v. Fendler*, 127 Ariz. 464, 472 (App. 1980). First, the dictionary definitions of

"subject to" are consistent with our interpretation because the adjective is not fixed in time at point of sale.  Thus, diesel fuel may be "subordinate to" or "subservient to" fuel taxes at purchase but not later.  ADOT's refund decision is dispositive.  Second, while AG opinions are advisory, *Bonito Partners, LLC v. City of Flagstaff*, 229 Ariz. 75, 80 n.5 (App. 2012), this one is outdated because it interprets an earlier version of the relevant tax statutes from decades before the legislature passed A.R.S. § 28-5612(F) and codified the relationship between fuel-tax refunds and use taxes, including the offset procedure.  Third, *Fendler* does not involve tax exemptions but was instead a criminal appeal in which this court "acquiesce[d]" to ADOR's interpretation of a corporate tax reporting statute.  127 Ariz. at 472.

**¶25**        We further note that Swift did not even accept its own alternative interpretation.  The record reflects that Swift knew the process — that taxpayers were entitled to obtain a fuel-tax refund based on actual use but would then owe use taxes on that diesel fuel.  Thus, when Swift applied to ADOT for a fuel-tax refund, it simultaneously reported the amount of use taxes it would owe if successful.  Swift cannot argue it was prevented from "comply[ing] and order[ing] [its] affairs accordingly."  *BSI Holdings*, 244 Ariz. at 22, ¶ 25.[2]

## CONCLUSION

**¶26**        We affirm the tax court's statutory interpretation and final judgment.  We deny Swift's request for attorney fees and costs because it did not prevail.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[2]        We do not address Swift's equitable estoppel argument because it was not raised in Swift's opening brief.  *Ariz. Dep't of Revenue v. Ormond Builders, Inc.*, 216 Ariz. 379, 386 n.7 (App. 2007).